**Luther M. O'BRIEN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 25376.

United States Court of Appeals
Fifth Circuit.

May 19, 1969.

Thomas M. Haas, Mobile, Ala., for appellant.

Don Conway, Asst. U. S. Atty., Mobile, Ala., for appellee.

Before GEWIN and GODBOLD, Circuit Judges, and CHOATE, District Judge.

GEWIN, Circuit Judge:

A jury found the appellant guilty of charges contained in a two-count indictment and he was given concurrent one-year sentences under each count. Count One charged that he unlawfully retained and concealed a stolen print-punch money order issuing machine and United States postal money orders with the intent to convert them to his use and gain in violation of 18 U.S.C. § 641. Count Two charged him with unlawfully, knowingly and wilfully appropriating the same property to his own use in violation of 18 U.S.C. § 1707.

Appellant contends that the following errors were committed: (1) the district judge questioned the witnesses excessively and inappropriately; (2) the court should have ordered a postal inspector to grant an interview to appellant's counsel for the purpose of determining whether a government witness had made prior inconsistent oral statements; (3) improper evidence was admitted; (4) the Assistant United States Attorneys made improper arguments to the jury; and (5) the evidence was not sufficient to sustain the conviction.[1]

The conduct of the trial judge must be measured by a standard of fairness and impartiality. He is not a mere moderator. It is his duty to conduct an orderly trial and to make certain as far as possible that there is no misunderstanding of the testimony of the witnesses. Considering the conduct of the trial in its entirety, we conclude that the trial judge did not commit error.[2]

After a Government witness testified on direct examination, counsel for appellant requested an opportunity "to make a request under the statute of the Jenkes [sic] case." Out of the presence of the jury but in the presence of the defendant, the Government's attorneys, the appellant's attorney and Postal Inspector Brown, the court considered counsel's request thoroughly. The Government was then requested to "turn over to defense counsel any statement alleged to have been made by this witness." The court went into the matter carefully and cautiously, but no "statement" within the purview of the Jencks Act, 18 U.S.C. § 3500, or any decisions interpreting it, was shown to exist. Counsel for appellant then requested the court to instruct the postal inspector to confer with him "so I can find out from him what previous statements, if any, this witness had made to someone for the purpose of cross examination." The postal inspector did not testify before the jury during the trial.[3] The court stated that it would not order or instruct the inspector to submit or not to submit to the requested interview. The record does not show what effort, if any, counsel for appellant made to discuss the case with the inspector or that the inspector had refused to discuss the matter with appellant's counsel.

---

1. Appellant's brief does not specify errors with certainty. Under the caption "Issues Presented For Review" is the following:

    1. Whether or not the trial court erred in its extensive examination of witnesses for the prosecution.

    2. Did the court below commit error in refusing counsel for the defendant, his request for an out of court interview with an investigator for the prosecution?

    3. Was it error for the trial court to deny defendant's motion for judgment of acquittal?

We have listed the contentions of the appellant as set forth in other portions of his brief and in oral argument.

2. Kyle v. United States, 402 F.2d 443 (5th Cir. 1968); Estrada v. United States, 392 F.2d 529, 530 (9th Cir. 1968); United States v. Ostendorff, 371 F.2d 729, 732 (4th Cir. 1967).

3. The inspector did testify in connection with fifth amendment claims of witnesses, but he did not appear as a witness against the appellant.

■ The Supreme Court has placed an affirmative duty on the trial judge to administer the Jencks Act. Final decision as to production must rest within "the good sense and experience" of the district judge, guided by the standards outlined in Supreme Court decisions.[4] We find no violation of the Jencks Act or any other error in the rulings of the district judge on this issue.[5]

■ The admissibility of evidence in the trial of criminal cases is governed by rule 26 of the Federal Rules of Criminal Procedure. The rule requires the application of the common law as interpreted by the Federal courts in the light of reason and experience, except where Congress or any of the other criminal rules provide otherwise. The chief test is relevance and materiality. In ruling on evidentiary questions the trial court has wide latitude and its rulings thereon should not be disturbed in the absence of an abuse of discretion. We are unable to conclude that the trial court committed error with respect to such rulings in this case.[6]

■ During the jury argument there were objections by both the Government and the appellant. The trial court ruled on all objections made and, in our view, correctly instructed the jury. During oral argument before this court, counsel for appellant raised an additional question about one argument made by the prosecution to which he did not object in the trial court. We have carefully reviewed all of the rulings of the trial judge and find them to be without error.

Those arguments to which no objection was made do not constitute plain or obvious error.[7]

■ Finally, we come to the contention that the evidence was not sufficient to sustain the conviction. At the conclusion of the Government's case, the appellant moved for a judgment of acquittal and rested his case without offering evidence. The district court denied the motion and appellant here attacks that ruling. In considering this contention of appellant—perhaps his most important one—we do not retry the case or substitute our judgment for that of the jury. We must review all of the evidence as a whole in the light most favorable to the Government and determine whether a reasonable-minded jury could reasonably conclude that the defendant was guilty beyond a reasonable doubt. The evidence in this case was largely circumstantial. Such evidence must be consistent with the guilt of the accused and also inconsistent with every reasonable hypothesis of his innocence.[8]

The evidence clearly shows that in September 1965 the United States Post Office in Nesbitt, Mississippi was burglarized and a print-punch money order machine and approximately 600 United States Postal Money Order forms were stolen. The postmaster estimated that the money order machine weighed approximately forty to fifty pounds. A very reluctant Government witness, Hinds, testified that he was present when the machine and money orders were stolen. The money orders were

4. Palermo v. United States, 360 U.S. 343, 354–355, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); Campbell v. United States, 365 U.S. 85, 89, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961).

5. Williamson v. United States, 365 F.2d 12 (5th Cir. 1966).

6. Cotton v. United States, 361 F.2d 673, 676 (8th Cir. 1966); Phillips v. United States, 356 F.2d 297, 301 (9th Cir. 1965); Holt v. United States, 342 F.2d 163, 166 (5th Cir. 1965).

7. Kyle v. United States, supra; Samuels v. United States, 398 F.2d 964 (5th Cir. 1968); Garcia v. United States, 315 F.2d 133 (5th Cir. 1963); Dunn v. United States, 307 F.2d 883 (5th Cir. 1962).

8. Montoya v. United States, 402 F.2d 847 (5th Cir. 1968); Weaver v. United States, 374 F.2d 878 (5th Cir. 1967); Williamson v. United States, 365 F.2d 12 (5th Cir. 1966); Strauss v. United States, 311 F.2d 926 (5th Cir. 1963); McFarland v. United States, 273 F.2d 417 (5th Cir. 1960).

taken to West Memphis, Arkansas and were divided four ways among the witness and three other persons identified as Washam, Sweeney and Henderson. Hinds testified that the name of appellant was mentioned in a conversation with Washam about the stolen property. He further testified that he saw appellant with Washam in Memphis, Tennessee. When asked the question, "Did you see Washam give the defendant, O'Brien, one hundred and five dollars to make a payment on his automobile to induce him to come down here to Mobile and pass the postal money orders?" Hinds responded, "I believe there was some money gave [sic] as an automobile payment. Now what was the other part of the question?" He testified that, while there had been talk about going to Mobile, nothing was said about O'Brien passing money orders. At this point the elicited testimony shifted the scene from Memphis to Mobile, Alabama.

Government witness Bolling testified that she met the appellant for the first time when he, Washam and Sweeney came to her home in Mobile in September 1965. The three of them were traveling together in a late model Cadillac automobile. When the three entered her home Washam and Sweeney were carrying two boxes. She did not see the contents of the boxes but described one as being obviously heavier than the other. O'Brien said nothing but he was in the presence and hearing of Washam and Sweeney as they told Mrs. Bolling that the boxes contained money orders. They, Washam and Sweeney, importuned her to go with them to pass the money orders. They promised to buy her clothes, hairpieces, wigs and other things to disguise her appearance. She was assured that the scheme was fool-proof and that she would not be apprehended. They told her that the money orders were

those taken from the Nesbitt Post Office. She did not accompany them as requested. Finally the three, Washam, Sweeney and the appellant, left together in the car, taking the two boxes with them.

Tested by the principles we have outlined above, we conclude that there was sufficient evidence to sustain a verdict of guilty under Count One. Since the one-year sentence imposed under Count Two is concurrent with the one-year sentence under Count One, we do not reach the question of the sufficiency of the evidence to support the verdict of guilty under Count Two.[9]

Judgment affirmed.

GODBOLD, Circuit Judge (dissenting):

This conviction should be reversed on either of two grounds. I respectfully dissent.

Appellant was charged with violation of 18 U.S.C.A. § 641 and § 1707. The elements of the first offense are (1) possession of property (2) with knowledge that it was stolen from the United States (3) with intent to convert to the possessor's use or gain. Section 1707 requires an actual conversion by stealing, purloining, embezzling, or appropriating of property used by the United States.[1] On each element the government must present evidence from which jury might find the accused guilty beyond a reasonable doubt.

Appellant's motion for judgment of acquittal on both counts, filed at the end of the government's case was denied. Appellant presented no evidence. My brother judges conclude that the proof was sufficient to sustain the verdict on Count One, the possession count. Since appellant was given concurrent sentences they do not review the evidence on

---

9. Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); Mishan v. United States, 345 F.2d 790, 791 (5th Cir. 1965); Fabianich v. United States, 112 U.S.App.D.C. 319, 302 F.2d 904, 905 (1962); Clark v. United States, 267 F.2d 99, 101 (4th Cir. 1959).

1. For a discussion of the elements of both offenses, see Conerly v. United States, 350 F.2d 679 (9th Cir. 1965).

Count Two, the conversion count. In my judgment the evidence was insufficient on both counts. The motion for judgment of acquittal should have been granted.

Only the occurrence in Memphis and the incident in Mobile tend to connect appellant with the stolen property and to support inferences that he was in possession and had the requisite intent.[2]

The significance of what took place at Mrs. Bolling's apartment in Mobile rests on the stipulation, ultimately wrung from the government at trial, that appellant *said nothing* at the apartment, and the evidence that with a single and doubtful exception he *did nothing* at the apartment other than to be in the presence of the stolen property and of discussion concerning it. The pleas to Mrs. Bolling to pass money orders, the promises of clothing and disguises, the assurances she would not be apprehended, the identification of the two (unopened) boxes as containing money order forms and the punch machine, and the statement of the value of the money orders, all came from Washam and Sweeney, none from appellant. The only inference, and for reasons discussed below it is a tenuous one, tending to show appellant *did* anything is an ambiguous reference to "they" taking the boxes to the car and putting them in the back seat.

Causey v. United States, 352 F.2d 203 (5th Cir. 1965) requires reversal for insufficiency of the evidence. This court reversed the conviction of Burl E. Causey on one count charging receipt, concealment and retention of postal money orders in violation of § 641, eight counts of forgery and one count of conspiracy. The evidence established that Causey was in and out of the house where the money orders were being forged on the night that the forging took place, that he took an auto trip with the other defendants, that on the trip some of the stolen money orders were passed, that the defendant signed the guest register for the group in a couple of motels. Without discussion the court out of hand rejected the evidence as insufficient on all except the conspiracy count, and after discussing the facts held as to that count nothing had been proved other than an opportunity, by association with the guilty parties, to become a conspirator.

In Montoya v. United States, 402 F.2d 847 (5th Cir. 1968), this court reversed a conviction for transporting and facilitating the transportation and concealment of a quantity of marihuana on evidence of possession considerably stronger than that presented here. Montoya was arrested while riding as a passenger in a pick-up truck with a closed body, containing 25 sacks of marihuana weighing 539 pounds. The driver pleaded guilty to a narcotics offense. But Montoya asserted that he had been along for the ride to visit his brother in jail and merely on the way home. En route the driver went to a ranch, two strange men took the truck away and later returned it, and Montoya and the driver resumed their journey. The road where they were arrested did not lead to Montoya's house. This court concluded that there was insufficient proof of possession.

2. The answer of Hinds, quoted by the majority, concerning the money for a car payment, seems to imply that Hinds evaded answering that part of the quoted question which asked if the money was given to induce appellant to come to Mobile and pass money orders. But between the question and the answer there was an objection and a ruling by the court as follows:

MR. HAAS [Defense Counsel]: Now, if the Court please, this witness doesn't know what may or may not have been in the mind of someone else, calls for a conclusion.

THE COURT: He can only answer what he saw and heard. On that basis you may answer the question.

Thus all we know from the Memphis occurrence is that Washam gave appellant the money for a car payment and that passing money orders was not discussed. We know that subsequently appellant was in Mobile with Washam and Sweeney, but in whose car we do not know.

In my view this case also calls for reversal for prosecutorial overkill in argument, inextricably linked to earlier prosecutorial conduct during the taking of testimony.[3] Over and over again defense counsel objected, often without success, to efforts in the testimony (describing events at Mrs. Bolling's apartment) to catch appellant in the sweep of terminology describing what "they" did and "they" said, for the occurrences there are central to the issues of possession by and intent of the appellant. And each time, when forced to the wall of strict accuracy, government counsel, and Mrs. Bolling, receded to recognition that "they" did not include appellant.[4]

In the first government argument to the jury counsel resumed the "they" approach, including appellant in both what "they" did and "they" said at the apartment. On objection by defense counsel, the court reminded the prosecutor of the stipulation that appellant had said nothing. One would have thought this would, at long last, have ended a prosecutorial approach which never should have begun. But in final argument the second government counsel picked up the refrain. His highly prejudicial and repeatedly incorrect remarks are set out in the margin.[5] There was no objection at this point. But one cannot fairly fault defense counsel. He had met with little success in his efforts throughout the trial to restrain government counsel from tarring appellant with the brush of the plural pronoun, and having literally forced a stipulation on this matter, which went to the heart of the government's case, he had found it impossible to hold counsel to it.

Statements by official representatives of our government must be taken to mean what they say. And courts must be willing to insist that what is said be adhered to. "Judicial discipline of lawyers is not self-operating. It must be invoked." Roscoe Pound, Criminal Justice in America, 187 at 195–196 (1930).

Unfortunately this is not a case in which one can fairly say that counsel was momentarily carried away with "the excitement of the trial" and "the ardor of advocacy,[6] or that these were mere forensic missteps. A reading of the record discloses the consistent thread of government effort to catch appellant in the net of what was done and said by others by characterizing occurrences in terms that included him.

This is not all. In argument, in attempting to tie in appellant, government counsel overstated what the evidence showed as to critical matters. These included a statement that appellant and Hinds discussed the money orders in Memphis—there was no such testimony. In each instance after objection, the court would instruct the jury that if the statements were not correct to disregard them. In the context of this case those admonitions were not sufficient.

Government counsel over objection referred to defense counsel as having mistreated and maltreated Mrs. Bolling and

3. For a full discussion of the problem, see R. Singer, Forensic Misconduct by Federal Prosecutors—How it Grew, 20 Ala.L.Rev. 227 (1968).

4. On cross-examination of Mrs. Bolling defense counsel, most of his objections to the "they" testimony having been unsuccessful, sought to show a prior inconsistent statement by Mrs. Bolling to the effect that appellant had said nothing. It was not until this time that the government, in objecting to the statement as irrelevant, acknowledged that appellant had said nothing at the apartment.

5. MR. SEGREST: Can it be doubted that Luther M. O'Brien and Washam, one of the people that there is testimony to you that burglarized this Nesbitt, Mississippi Post Office—came here to Mobile to Church Street, and went into a house together—*O'Brien*, Washam, and Sweeney. That *they* took these two boxes in there. That *they* discussed the fact that in those boxes were the money orders and the stolen print-punch money order machine. And *they* discussed passing them. *They* needed help passing them. And *they* asked these girls to go with them. (Emphasis added)

6. Dunlop v. United States, 165 U.S. 486, 498, 17 S.Ct. 375, 41 L.Ed. 799, 803 (1897).

having been cruel to her on the witness stand. One prosecutor referred to the men in the Bolling apartment as "hoods." Objection to this was sustained, motion for mistrial denied, and the prosecutor apologized to the court. The final sentence of the first government argument was:

> "He is guilty. *We know he is guilty*, and I submit the verdict ought to be guilty." (Emphasis added)

There was no objection to this statement of extra judicial personal knowledge of guilt, but coming as it did as the last word of the argument, it was plain error.[7]

There is so much prosecutorial overkill in this case that the single instances, several of which if separately focused upon would alone reverse, tend to be submerged in the whole. The cumulative effect impels the conclusion that appellant was deprived of a fair trial. The ringing proclamation of *Berger* is still alive:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape nor innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to

use every legitimate means to bring about a just one.

295 U.S. at 88, 55 S.Ct. at 633, 79 L.Ed. at 1321.

---

7. Justice Sutherland said in *Berger* "[A]ssertions of personal knowledge [by the prosecuting attorney] are apt to carry much weight against the accused when they should properly carry none." Berger v. United States, 295 U.S. 78 at 88, 55 S.Ct. 629, at 633, 79 L.Ed. 1314 at 1321 (1935).

This record does not fairly support any inference that defense counsel was "riding the verdict," *Cf.* Crocklin v. United States, 252 F.2d 561 (5th Cir. 1958). He repeatedly sought to keep government counsel within bounds and once in oral argument moved for a mistrial (for the reference to "hoods").