UNITED STATES of America,
Plaintiff-Appellee,

v.

Clarence Eugene **MIDDLEBROOKS**, Jr.,
Defendant-Appellant.

No. 27859.

United States Court of Appeals,
Fifth Circuit.

Aug. 20, 1970.

Jones, Circuit Judge, dissented and
filed opinion.

Edward R. Kirkland, Orlando, Fla., for appellant.

John L. Briggs, U. S. Atty., Middle District of Florida, Allan P. Clark, Asst. U. S. Atty., Middle District of Florida, John W. Caven, Jr., Jacksonville, Fla., for appellee.

Before JONES, WISDOM, and COLEMAN, Circuit Judges.

WISDOM, Circuit Judge:

A federal grand jury returned a twenty-one count indictment against Clarence E. Middlebrooks, doing business through Turbonique, Inc., for using the mails in furtherance of a scheme to defraud, in violation of 18 U.S.C. § 1341. The defendant, highly intelligent, but not a lawyer, insisted on conducting his own defense. As usual in such cases, his dual position created difficulties for him, for the court, and for the trial jury. The jury found Middlebrooks guilty on sixteen counts and not guilty on three counts; the Government dismissed the other counts. The trial judge sentenced him to two years imprisonment and fined him $4000 on eight counts. He was given a suspended sentence and a total probationary period of five years to run consecutively to the sentence of imprisonment imposed on count five. Middlebrooks perfected his appeal through retained counsel.

The defendant designed, manufactured, and sold, through the United States mails, supercharger and turbine kits that were virtually impossible for the average mechanic to assemble. These kits rarely contained more than six rough metal castings, although pictures of the kits in various magazines usually showed ten or twelve parts. Turbonique catalogues said: "Can be easily installed with the use of small, basic machine and hand tools." Testimony at the trial revealed that a sixteen inch lathe, drill press, and precision balancing equipment were necessary tools for assembling the Turbonique Model No. C–2–C Supercharger. Perhaps a person with the defendant's eccentric genius for mechanical engineering might be able to take the raw materials and make them operable by adding an ignition system, fuel tank, plumbing fixtures, valves and bearings, but this was beyond the capability of the ordinary mortal. The expense of extra machinery, of necessary skilled craftsmen, of special fuel, and of additional parts added up to about $500 to $900 beyond the purchase price of about $100 to $150. This Middlebrooks must have known.

The brochures and form letters the defendant used to sell his product offered supercharger casting kits at a so-called fifty percent dealer discount and also offered a distributorship for Turbonique products. Every purchaser was offered the discount and a distributorship. Turbonique sent form letters to prospective customers stating that: "Your name was mentioned at a sales meeting with regard to an exclusive Turbonique distributorship in Lapeer County." The only salesman employed at Turbonique was the defendant.

All Turbonique supercharger and turbine "kits" were shipped C.O.D. so that the buyer was required to pay before inspecting the merchandise received. Middlebrooks would then have his money and the purchaser would have nothing of value unless he were willing to expend additional sums of money to make an operable unit. In the final analysis, a buyer of one of the "kits" would either be stuck with something valueless to him and charge off the transaction to experience, or he would have to engage in a series of progressively more expensive purchases to assemble and make operable the initial purchase of rough metal castings. Once a Turbonique customer had parted with his money, there was virtually no hope of obtaining a refund. Return shipments were authorized only for exchange and as credit toward purchases of more expensive supercharger models.

The record shows that the scheme to defraud, for which the mails were an essential element, was premised on half truths, subtle concealment of material

facts, and patent falsehoods. Instead of a product "easily installed", a purchaser acquired a few parts which with the addition of other parts and the skills of an electrician, plumber, and machinist, just might some day be part of an operable supercharger.

■ The accepted principle is that where there is a jury verdict against the defendant, the evidence must be viewed in a light most favorable to the Government. Shale v. United States, 5 Cir. 1968, 388 F.2d 616, cert. denied 393 U.S. 984, 89 S.Ct. 456, 21 L.Ed.2d 445. Even without benefit of this principle, the record compels the Court to hold that the question of the defendant's guilt or innocence was properly submitted to the jury.

On appeal, zealous counsel for the defendant raised eight points. None of these have any merit. We observe that some of the trial judge's comments to which counsel objects were made necessary because of Middlebrooks's dual role as defendant and lawyer for the defense. Middlebrooks argued with witnesses, interjected scandalous and inflammatory remarks, and violated miscellaneous procedural rules during his conduct of the trial. It was a lengthy trial. The district judge showed commendable moderation in keeping the trial on the tracks, and *not* prejudicing the jury against the defendant, in spite of provocatory conduct on the part of the defendant.

■ During the course of its deliberations, the jury requested the court to give additional instructions on the definition and elements of mail fraud. One of the jurors had asked for an explanation of the difference between unethical and fraudulent conduct. This question would tax philosophers. In his original charge the trial judge had given proper instructions on the elements of the offense here. We uphold his decision to decline to answer the specific question and to reiterate his original instructions on the elements of mail fraud. *See* Eisenhardt v. United States, 5 Cir.1969, 406 F.2d 449, 451; Pope v. United States, 8 Cir.1967, 372 F.2d 710, 731, vacated on other grounds 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317; United States v. Hall, 2 Cir.1965, 346 F.2d 875, 879, cert. denied, 382 U.S. 910, 86 S.Ct. 250, 15 L.Ed.2d 161; Clark v. United States, 5 Cir.1923, 293 F. 301, 304.

We hold that the summaries of complaints received by the Chamber of Commerce and brought to defendant's attention were properly admitted in evidence on the issues of intent and lack of good faith. As the truth or falsity of the items offered was not at issue, the complaints were clearly admissible to establish intent or lack of good faith. United States v. Press, 2 Cir.1964, 336 F.2d 1003, 1010–1012, cert. denied 379 U.S. 965, 85 S.Ct. 658, 13 L.Ed.2d 559, rehearing denied 380 U.S. 927, 85 S.Ct. 887, 13 L.Ed.2d 815. *Accord,* New England Enterprises, Inc. v. United States, 1 Cir.1968, 400 F.2d 58, cert. denied 393 U.S. 1036, 89 S.Ct. 654, 21 L.Ed.2d 581; Phillips v. United States, 9 Cir.1965, 356 F.2d 297, cert. denied 384 U.S. 952, 86 S.Ct. 1573, 16 L.Ed.2d 548.

■ The court correctly refused to give a charge that "the Government's evidence must be such as to exclude every reasonable hypothesis other than that of guilt.

"Circumstantial evidence * * * is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more." Holland v. United

States, 1954, 348 U.S. 121; 139–140, 75 S.Ct. 127, 137, 99 L.Ed. 150.

 Although the defendant's secretary, Mrs. Kilpatrick, did not testify that she was the custodian of a certain group of records referred to as a "refund ledger", nor that such records were kept in the ordinary course of business nor when the transactions contained in such ledger were recorded, the defendant attempted to introduce this record through Mrs. Kilpatrick. The proper foundation for introducing this ledger under the Business Records Act, 28 U.S.C. § 1732, was not made. *See e.g.* Burger v. United States, 8 Cir. 1959, 262 F.2d 946, 954, cert. denied 359 U.S. 990, 79 S.Ct. 1119, 3 L.Ed.2d 979, rehearing denied 360 U.S. 940, 79 S.Ct. 1446, 3 L. Ed.2d 1552. The trial court is accorded an area of discretion in determining admissibility of documents as business records and its rulings should not be disturbed unless that discretion has been abused. O'Brien v. United States, 5 Cir.1969, 411 F.2d 522, 524; McDaniel v. United States, 5 Cir.1965, 343 F.2d 785. An examination of what appellant described as refund ledger revealed that checks were issued in many instances without any notation as to what they represented, and many of the entries merely reflected credit exchanges rather than refunds. A characterization of this hodgepodge of unauthenticated records as a "refund ledger" was a self-serving characterization with no basis in fact. In United States v. Shavin, 7 Cir. 1961, 287 F.2d 647, the court held that exclusion of testimony by witnesses having transactions similar to those alleged in the indictment was reversible error where the evidence as a whole disclosed a close question as to whether the accused had an intent to defraud or acted in good faith. In the case at bar, the defendant offered no live testimony by witnesses who dealt with Turbonique and received refunds. Nor was the question of his intent a close one. The trial judge properly exercised his discretion in excluding appellant's proffer of unauthenticated, miscellaneous records that appellant called a "refund ledger".

The judgment is affirmed.

JONES, Circuit Judge (dissenting):

The case was one for the jury, and one which the jury might have decided either way. The case troubled the jury as is shown by the questions asked of the court upon the return of the jury to the court room for further instructions. A juryman stated to the court, "[O]ne of our problems is a difference of opinion as to what is considered ethical and fraudulent conduct." The response of the court was, "I can't help you on that. I can't help you." If the court had given the jury the help it requested there would be no question as to whether the appellant was convicted of a mail fraud offense or a breach of ethics. If the court needed help in helping the jury with its problem, it might have found it in the opinion of the Supreme Court where it is said:

> "It is the province of ethics to consider of actions in their relation to motives, but jurisprudence deals with actions in their relation to law, and for the most part independently of the motive." Adler v. Fenton, 65 U.S. (24 How.) 407, 410, 16 L.Ed. 696.

The problem ought not be quipped off by saying, as the majority has said, "This question would tax philosophers." I think the appellant should have a trial free from doubt as to what the jury decided. I dissent.