UNITED STATES of America,
Plaintiff-Appellee,

v.

Alan Louis CHAVIS and Lambert Daniel Slisz, Defendants-Appellants.

No. 84–1305.

United States Court of Appeals,
Fifth Circuit.

Aug. 27, 1985.

Samuel H. Bayless, Jack Paul Leon, San Antonio, Tex., for A. Chavis.

Roy R. Barrera, Sr., William McQuillen, San Antonio, Tex., for L. Slisz.

Helen Eversberg, U.S. Atty., Sidney Powell, Mitch Weidenbach, Asst. U.S. Atty., Robert Michael Duffey, Sp. Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

## ON SUGGESTIONS FOR REHEARING EN BANC

Before RUBIN, WILLIAMS and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.

Treating the suggestions for rehearing en banc as petitions for panel rehearing, it is ordered that the petitions for panel rehearing are DENIED. No member of the panel nor Judge in regular active service of this Court having requested that the Court be polled on rehearing en banc (Federal Rules of Appellate Procedure and Local Rule 35), the suggestions for Rehearing En Banc are DENIED.

The panel opinion issued July 1, 1985, is withdrawn and the following opinion is issued in its place.

Alan Louis Chavis and Lambert Daniel Slisz attack their convictions for mail fraud, a violation of 18 U.S.C. § 1341. Chavis and Slisz assert numerous grounds of error; finding that such error as may have occurred below was harmless, we affirm.

Chavis and Slisz' legal problems stem from the activities of a number of companies owned by Chavis. Each of these companies conducted its operations in essentially the same fashion, with minor factual variations not relevant to this appeal. Typical of their modus operandi was that of Chavis' original company, American Association of Home Income Programs (AAHIP). Through classified advertisements and circulars, AAHIP represented that the company sought individuals to perform work in their homes. For example, the AAHIP materials stated:

> You would make $58.90 tomorrow and $353.88 next week if you had your AAHIP membership package in your hands right now. (We also need homeworkers to process envelopes. We pay you $41 per 100 envelopes. Details in box at bottom of page).

The box at bottom of page read as follows:

> AAHIP needs dependable homeworkers to work for us in our circular mailing program immediately. The home office will pay you $41 for every 100 envelopes you mail according to instructions, 41 cents per envelope. We pay for all postage and shipping expenses.

Individuals desiring to join the "home income program" were required to send a "membership fee" of $20 (other companies' fees ranged from $10 to $20), which was represented to be "the only money that you will ever have to pay to AAHIP." The company's materials promised a refund if the homeworker did not earn the promised amounts. On paying the membership fee, the worker received additional materials from the company which informed them

that their duties would not be processing envelopes, but would instead involve placing at their own expense classified ads like those to which they had responded. The promised "salary" was actually a payment for each response received from these ads and forwarded to the company.[1] Any homeworker requesting a refund was sent a letter admonishing them not to request a refund until they had given the "plan" an "honest try," as they had "promised."

All of the companies named in the indictment were owned by Chavis, but several of the companies were in large part operated by Slisz. Slisz received mail, including complaints, performed various banking duties, distributed materials describing the various programs, and performed miscellaneous other functions on behalf of the companies.

Chavis was originally indicted on twenty counts of mail fraud; Slisz was indicted for seven. After a joint trial, Chavis was convicted on nineteen counts, Slisz on seven. In this appeal, Chavis and Slisz jointly protest the following issues:

(1) The district judge's failure to recuse himself;

(2) A number of evidentiary rulings;

(3) The form of various jury instructions and the failure to give various other instructions;

(4) Submission of the text of 18 U.S.C. § 1341 to the jury after the jury had been instructed; and

(5) The district judge's refusal to allow post-verdict polling of the jury.

Slisz individually challenges the following: (1) The joinder of his trial with that of Chavis; (2) failure to sever his trial from that of Chavis; (3) sufficiency of the evidence to support his conviction; (4) sufficiency of the indictment under which he was charged; and (5) the district judge's failure to compel discovery of an anonymous informant's call to a postal inspector. Finally, Chavis challenges the district

judge's refusal to allow him to submit a portion of his income tax return showing a sizeable donation to a church.

## I. RECUSAL

■ Chavis and Slisz' motion for recusal was based solely on Judge Suttle's grant of a preliminary injunction against them in a separate civil action brought by the post office. Thus, Chavis and Slisz argue that the judge's partiality may be questioned, largely because he "made findings of fact concerning ultimate issues." This need not detain us long. "[F]amiliarity with defendants and/or the facts of the case that arises from earlier participation in judicial proceedings is not sufficient to disqualify a judge from presiding at a later trial." *In re Corrugated Container Antitrust Litigation*, 614 F.2d 958, 965 (5th Cir.), *cert. denied, Mead Corp. v. Adams Extract Co.*, 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980).

## II. EVIDENTIARY RULINGS

### A. Better Business Bureau Records and Brochures

Chavis and Slisz' primary defense was "good faith" or lack of intent, based primarily on the companies' refund policies. To support this defense, Chavis and two of his employees testified that dissatisfied customers always received refunds, and no attempts were made to discourage those seeking refunds. In rebuttal, the government called the operations manager of the San Antonio Better Business Bureau, who testified about the BBB's methods of handling complaints against area businesses. Essentially, when the BBB received complaints, they were forwarded to the business and a record was kept of the complaint, the business' response, and the ultimate disposition of the claim. These records were summarized in "complaint logs." Letters complaining that Chavis'

---

**1.** Other incarnations of Chavis' company, after receiving the membership fee, then instructed the homeworker to place ads promising loans. The homeworker was to mail a brochure to those responding to these ads, and attempt to collect a $10 fee for more details. The homeworker's salary was to consist of a percentage of the money collected.

companies discouraged or refused refunds and the BBB's complaint logs concerning these complaints were admitted into evidence.

Chavis and Slisz contend that these records and complaints were admitted to prove the truth of the matters contained in them, and are therefore hearsay. They note that the primary defense in the trial was that of good faith, a major component of which was the contention that the companies promptly made refunds when requested. Based on two isolated and vague comments in the government's closing argument and one question posed to the BBB representative, Chavis and Slisz contend that the BBB records were used directly to rebut their evidence that refunds were always made on request. We disagree. The government did not use these letters and related records complaining of appellants' failure to make refunds for the truth of the individual complaints but rather to show that defendants were notified of the complaints. *See* Fed.R.Evid. 801(c); *United States v. Middlebrooks,* 431 F.2d 299, 301 (5th Cir.1970), *cert. denied,* 400 U.S. 1009, 91 S.Ct. 569, 27 L.Ed.2d 622 (1971). The jury was instructed that this evidence could be considered only for that limited purpose.

The government also used a BBB-compiled brochure concerning "envelope stuffing schemes" in its examination of Chavis. This brochure was originally admitted, over objection, in the government's cross-examination of a defense expert. Chavis complains that this brochure was hearsay. Since this brochure does not appear to have been properly authenticated, its admission into evidence may have been erroneous. Given the volume of evidence introduced at trial and the relatively minor role this brochure played, however, any error in its admission was harmless.

**B. Texas Attorney General's Files**

Chavis and Slisz produced the testimony of Barbara Dupont, one of Chavis' employees, who authenticated various letters from satisfied customers of Chavis' companies. These letters indicated that Chavis' compa-

nies would, on request, prepay advertising expenses incurred by homeworkers. Dupont and Chavis both had testified that the companies offered to prepay advertising expenses if necessary. The government was allowed in cross-examining Dupont to inquire into and introduce into evidence portions of complaint files maintained by the Texas Attorney General's office. The materials admitted were one complaint form from a Mr. Grogman, and two brochures or letters from Chavis' companies to other complaining parties. A letter from the Texas Attorney General's office and Chavis' handwritten reply were introduced along with the Grogman complaint.

The defendants contend that the materials were used substantively to prove the truth of the matter asserted—that advertising expenses were not paid in advance by the companies. Further, they contend that these documents were not authenticated properly. The government, on the other hand, again contends that the complaint was admitted to rebut Chavis and Slisz' assertions of good faith refund policy by proving that they had notice of the complaint that a refund was not made. The brochures or letters, it asserts, were introduced to rebut Chavis' assertions that the company's materials had been amended to reflect that homeworkers would be required to pay certain expenses. We agree with the government that the complaint was not admitted to prove the truth of the matter asserted in it, but rather as proof of notice. *See United States v. Middlebrooks,* 431 F.2d at 301. The company materials likewise were not introduced to prove any of the statements in them, but rather to show that modifications had not, as Chavis contended, been made. Again, a limiting instruction was given. With regard to the second prong of the defendants' argument, the requirement of authentication is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). All of the materials from the Attorney General's files which were introduced were identified and ade-

quately authenticated by the testimony of Dupont.

## C. False Representation Orders

Several of Chavis' companies became the subjects of False Representation Orders (FROs), which terminate the delivery of mail to a postal customer. These orders are issued by the United States Postal Service after an administrative hearing, if it is determined that a postal customer is engaged in obtaining money or property through the mails by means of false representations. Three postal inspectors testified for the government concerning False Representation Order hearings on four of Chavis' companies. One inspector testified concerning the significance of an FRO and the procedure used for obtaining an FRO. All of the inspectors testified that FRO hearings were held concerning the activities of four Chavis companies, that various witnesses testified in these proceedings, and that FROs were ultimately issued against the four companies. The government also used the administrative findings of fact and conclusions of law in cross-examining Chavis. Finally, the government introduced a letter from a postal inspector to one of Chavis' companies advising the company that the postal service considered its activities to be illegal.

▉ The defendants contend that the probative value of this testimony was far outweighed by its prejudicial impact, and further that it was hearsay. We again must agree with the government's assertion that part of this evidence was introduced not for its truth but rather to rebut defendants' assertions that they believed their business to be legitimate, and they were unaware of any wrongdoing. The portion of this evidence introduced in the government's case in chief was also not offered to prove the truth or falsity of any administrative findings, but rather as relevant to the intent issue, to show that the defendants were on notice of complaints. *See United States v. Middlebrooks*, 431 F.2d at 301. The jury was instructed immediately following the admission of this evidence and in the final charge that this evidence could be considered only as it related to defendants' intent. Finally, the district judge acted well within his discretion in finding that the probative value of this evidence was not outweighed by its prejudicial potential.

## D. North Dakota Injunction

▉ In 1982, a North Dakota state district court enjoined one of Chavis' companies, AMFICO, from doing business in the state. Under the North Dakota Consumer Fraud Law, the consumer fraud division of the state attorney general's office may send inquiries to a business for the purpose of determining whether the business is operating in violation of state law. If the inquiry is not answered, the attorney general may seek an injunction. AMFICO failed to answer the attorney general's queries, and thus an injunction issued. The government introduced records from the Attorney General's office which documented the steps which led to the injunction. These records included letters to AMFICO explaining that an injunction would be obtained, a copy of the petition for an injunction, and a copy of the injunction itself. The file also contained receipts signed by Slisz for copies of these materials.

The defendants make a three-point attack on the admission of this evidence: First, that it is proof of an extrinsic offense not relevant to the one charged; second, its prejudicial potential outweighs its probative value; and third, it is hearsay. We disagree with each of these. The district court did not abuse its discretion in admitting this evidence to show that the defendants were aware that North Dakota authorities considered their business operation illegal, enjoined defendants' companies from operating in the state, and defendants continued to do business in spite of this knowledge. The district court gave a limiting instruction to this effect. A representative of the North Dakota Attorney General's office properly authenticated the records, and the district court was within its discretion in finding that their probative value

was not outweighed by their prejudicial potential.

### E. Expert's Testimony Concerning Mental State

Marvin Hodges testified on behalf of the defense that the materials and representations used by Chavis' companies were not misleading or unethical. Following Mr. Hodges' testimony, Dr. Birdwell, an advertising expert, testified on behalf of the government that the materials were misleading. At one point, on redirect examination, a hypothetical question about defendants' good faith was posed to Dr. Birdwell in which he was asked to assume that an individual had made false representations and had been put on notice that customers were dissatisfied, the authorities expressed their concern about the matter, yet the individual continued to make the same representations. Dr. Birdwell responded "[I]t would seem to me that there wasn't any good faith. It was obviously an intended misrepresentation." The defendants contend that this testimony was outside Dr. Birdwell's area of expertise, and therefore inadmissible under Fed.R. of Evid. 702.

■■■■ We agree that in the ordinary circumstance testimony concerning a defendant's state of mind or intent must be avoided. *United States v. Ruppel*, 666 F.2d 261, 270 (5th Cir.), *cert. denied*, 458 U.S. 1107, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982); *United States v. Webb*, 625 F.2d 709, 711 (5th Cir.1980). In this case, however, the government's questioning was preceded by the following questions by Chavis' counsel:

Q. I am asking you, can you acknowledge that that could happen, that a person in good faith could make a representation that is false?

  \*  \*  \*  \*  \*  \*

Q. All right. And that's not fraud, is it, sir? It's not an intent to deceive?

Thus, Chavis "opened the door" to this testimony. We disagree with Chavis' contention that the government first elicited testimony concerning whether the misrepresentations were intentional in its initial direct examination.

### F. Envelopes Marked "Refused"

■■■■ In connection with the testimony of two witnesses who had sent certified letters to Chavis' companies requesting refunds, and testified that delivery of these letters was refused, the government introduced two envelopes (*not* the contents of the envelopes) marked "Refused." The government also introduced a letter from Slisz to the postmaster at New Braunfels, Texas, which stated in part: "I have been instructed by my employer not to sign for any mail and not to pay for any postage due mail." The defendants object that all of these materials are hearsay. With regard to the envelopes which were marked refused, even if these notations do constitute hearsay, the error is certainly harmless. The individuals who sent these letters testified to the facts surrounding the mailing and return of these letters. Introduction of the envelopes did nothing more than corroborate this testimony, which the defendants have not attacked. The letter to the New Braunfels postmaster from Slisz is not hearsay and therefore admissible. Fed.R.Evid. 801(d)(2).

### G. Refusal to Admit Evidence of Charitable Contributions

■■ The district court refused to allow Chavis to submit to the jury a portion of his personal income tax return which reflected a large contribution to a church. Chavis argues that this refusal was erroneous because this evidence was necessary to allow him to rebut the government's argument that the money he received from his companies went for planes, cars and other accoutrements of high living. We disagree, because Chavis has pointed to only a single question in the thirty-odd volumes of this record which could conceivably be interpreted to indicate that the government attempted to establish that Chavis' receipts went for such things. Any evidence of charitable contribution was therefore irrelevant, and this evidence was properly excluded.

## H. Declinations of Prosecution

The district judge instructed Chavis' counsel at the close of evidence not to refer in argument to Chavis' reliance on past declinations of prosecution by the United States. The district judge also refused to give a defensive instruction that these declinations of prosecution could be considered on the issue of intent.

The conduct of trial and the framing of the issues to be presented to the jury are in the sound discretion of the district court. *See Stich v. United States,* 730 F.2d 115, 117 (3d Cir.), *cert. denied,* ── U.S. ──, 105 S.Ct. 294, 83 L.Ed.2d 229 (1984); *Bryan v. Cargill, Inc.,* 723 F.2d 1202, 1203 (5th Cir.1984). The evidence of declinations of prosecution had very little probative value on the issue of intent. *See United States v. Lichenstein,* 610 F.2d 1272, 1277–78 (5th Cir.), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980). It was within the district court's discretion to restrict counsel's argument on this question and avoid undue emphasis on an issue that could lead the jury away from the central issues in the case. Even if the district court did abuse its discretion, the error was harmless in light of the overwhelming evidence of defendants' intent adduced by the government.

## III. JURY INSTRUCTIONS

Chavis complains that the judge refused to instruct the jury that ignorance of the law could be considered on the issue whether Chavis had the specific intent required for the crime of mail fraud. Ignorance of the law is relevant to the issue of specific intent, and generally a defendant is entitled to have the jury so instructed. *See United States v. Schilleci,* 545 F.2d 519 (5th Cir.1977). The jury charge must, however, be considered as a whole, and in the full context of the trial. *See United States v. Grissom,* 645 F.2d 461, 464 (5th Cir. 1981); *United States v. Fooladi,* 746 F.2d 1027, 1030–31 (5th Cir.1984), cert. denied, ── U.S. ──, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985).

In determining whether the failure to instruct the jury that ignorance of the law may be considered on the issue of specific intent constitutes reversible error, our cases fall into two categories. In one, exemplified by *United States v. Schilleci,* the jury is specifically instructed that ignorance of the law may not be considered. This is an improper instruction. In the other, exemplified by *United States v. Bush,* 599 F.2d 72, 76–78 (5th Cir.1979), the jury is not specifically instructed that ignorance of the law is no excuse, and the specific intent instruction given, in the context of the case, is sufficient to allow the jury to consider the defendants' ignorance of the law. This case is controlled by *United States v. Bush.* In the instant case, the jury was correctly instructed that "specific intent, as the term implies, means more than the general intent to commit an act. To establish specific intent, *the government must prove that a defendant knowingly did an act which the law forbids, purposely intending to violate the law.*" In addition, a defensive instruction on good faith reliance on the advice of counsel was given. Taken as a whole, the jury instructions were sufficient to allow the jury to consider ignorance of the law on the issue of specific intent.

The defendants also argue that the district judge erred in instructing the jury that evidence of refunds could be considered only on the issue of intent to defraud, and not on the issue whether there was a scheme or artifice to defraud. The defendants contend that intent to defraud and the existence of a scheme or artifice are inseparable, and that this artificial distinction could therefore have misled the jury. The jury was, however, amply instructed that intent to defraud was a necessary element of the government's case, and could not have convicted the defendants had it not found specific intent to defraud. Thus, even if, as the defendants contend is possible, the jury concluded that a scheme or artifice existed simply because misrepresentations were made, it still could not have convicted absent a finding of intent.

Whatever technical appeal the defendants' contentions may have, the jury instructions given here were adequate. We also find no merit to the defendants' contentions that the jury should have been instructed that the existence of a refund policy in itself might negate intent to defraud.

■ The jury began its deliberation the afternoon of February 16, 1984. After resuming deliberation the following morning, the jury requested a copy of 18 U.S.C. § 1341. The defendants contend that the district court erred in submitting to the jury the text of the statute without also repeating other explanations and definitions in the original charge, particularly defensive instructions and those regarding intent. The only authority cited by the defendants which arguably supports this contention is *Bland v. United States*, 299 F.2d 105 (5th Cir.1962). The defendants in *Bland* were charged with bringing aliens into this country in violation of 8 U.S.C. § 1324(a)(1). The district court initially properly charged the jury that guilty knowledge was a necessary element of a violation of section 1324(a)(1). In response to jury request some four hours later for the text of section 1324(a)(1), however, the district court read an excerpted version of the statute stating "in essence, that any person who brings into the United States or lands in the United States an alien not duly admitted by an Immigration Officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, *shall be guilty*." 299 F.2d at 108 (emphasis added). We held that this abridged version, which failed to mention guilty knowledge, might have misled the jury: "The jury could take literally the phrase 'shall be guilty' found at the end of the statute and the danger is great that they were misled and gave no further thought or consideration to the proposition that violation without knowledge or intent would not constitute the offense charged." *Id.* The court also noted that four hours had passed since the original instructions which made it highly likely that the jury had

forgotten the intent requirement. *Id.* at 109. The defendants contend that since specific intent to defraud is an implicit element of 18 U.S.C. § 1341, *see United States v. Kent*, 608 F.2d 542, 545 n. 3 (5th Cir.1979), *cert. denied*, 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980), the district court's failure to reinstruct the jury concerning intent and their good faith defense requires reversal under *Bland*.

Here, the following version of 18 U.S.C. § 1341 was given to the jury:

ALL 19 COUNTS OF THE INDICTMENT—COUNTS 1–7 · AND 9–20 CHARGE ONE OR BOTH OF THE DEFENDANTS WITH VIOLATING SECTION 1341 OF TITLE 18, UNITED STATES CODE, WHICH READS IN ITS RELEVANT PART AS FOLLOWS:

WHOEVER, HAVING DEVISED OR INTENDING TO DEVISE ANY SCHEME OR ARTIFICE TO DEFRAUD, OR FOR OBTAINING MONEY ... BY MEANS OF FALSE OR FRAUDULENT PRETENSES, REPRESENTATIONS, OR PROMISES, ... PLACES IN ANY ... AUTHORIZED DEPOSITORY FOR MAIL MATTER, ANY MATTER OR THING WHATEVER TO BE SENT OR DELIVERED BY THE POSTAL SERVICE, ... OR KNOWINGLY CAUSES TO BE DELIVERED BY MAIL ACCORDING TO THE DIRECTION THEREON, ... ANY SUCH MATTER OR THING ... (FOR THE PURPOSE OF EXECUTING SUCH SCHEME OR ARTIFICE OR ATTEMPTING SO TO DO) ...

SHALL BE GUILTY OF AN OFFENSE AGAINST THE UNITED STATES.

This is a copy of Title 18, United States Code, Section 1341 as the court instructed you in its charge February 16, 1984.

The jury had been instructed in the initial charge:

A representation is 'false' or 'fraudulent' if it relates to a material fact and is

known to be untrue or is made with reckless indifference as to its truth or falsity, and is made or caused to be made with intent to defraud. A statement or representation may also be 'false' or 'fraudulent' when it constitutes a half truth, or effectively conceals a material fact, with intent to defraud.

In addition, the jury was amply instructed that specific intent was a necessary element of a violation of section 1341.

This case is distinct from *Bland* in that all of the relevant language of the statute, including the language requiring a "scheme or artifice to *defraud*" or "obtain money or property by means of *false or fraudulent pretenses ...*" was given to the jury. This language, taken in conjunction with the earlier instructions which repeatedly informed the jury that intent was a necessary element of the government's case, adequately signalled the intent requirement to the jury. In these circumstances, the district court was not absolutely required to re-instruct the jury on defensive matters outside the statute. *Bland* was based on the principle that "when the jury requests further instructions on points which are favorable to the Government, the trial judge should repeat instructions favorable to the defense where the requested instructions taken alone might leave an erroneous impression in the minds of the jury." 299 F.2d at 108. The necessity of intent was so emphasized in the initial charge, and we believe, so signalled by the language of section 1341, that it is extremely unlikely that an erroneous impression was left in the minds of the jury here. Particularly given the length of time which elapsed between the original charge and the submission of the statute, the better practice would have been to reinstruct the jury on the basic defensive theories. Nonetheless, "generally speaking, 'the necessity, extent, and character of any supplemental instructions to the jury are matters within the discretion of the district court.'" *United States v. Andrew*, 666 F.2d 915, 922 (5th Cir.1982). We find no abuse of discretion here.

## IV. OTHER MATTERS

■ During the course of the trial, one juror returned home to find attached to his doorknob a note referring to an unrelated case and generally defamatory of the presiding judge. A juror brought this note to the attention of the rest of the jury, then to the attention of the United States Marshal, who then brought it to the attention of the court. The judge individually interviewed each of the jurors to determine whether this note had created any bias, ultimately finding that it did not. The defendants argue, however, that they are entitled to reversal based on the district judge's subsequent refusal to allow them to conduct post-verdict interviews of the jurors. This argument is patently without merit. In order to justify the extraordinary step of examining the jury concerning its verdict, a defendant must make a preliminary showing of misconduct on the part of the jury, or that the jury based its verdict on matters outside the record. *United States v. Davila*, 704 F.2d 749, 754 (5th Cir.1983). Here, no such showing has been made, and post-verdict interviews could only serve as a "fishing expedition."

■ Chavis and Slisz also challenge the indictment as insufficient. An indictment is to be read practically and in light of its purpose—to fairly inform the defendants of the charge against him and protect him from further prosecution for the same offense. *United States v. Mouton*, 657 F.2d 736, 739 (5th Cir.1981). It is clear that this indictment served its purpose. Slisz also contends, apparently on due process grounds, that the government's delay in seeking the indictment requires reversal. In order to justify a reversal on this ground as an initial matter some prejudice must be shown. *United States v. Townley*, 665 F.2d 579, 581–82 (5th Cir.), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982). The district court conducted a hearing on this issue and determined that Slisz had not been prejudiced, a finding which Slisz does not chal-

lenge as clearly erroneous. This issue is therefore without merit.

■ Slisz' contention that the district court erred in refusing to compel the government to disclose the contents of a memorandum summarizing an anonymous tipster's phone call to a postal inspector is also without merit. This material was not exculpatory, was not used by the government in its case, and contrary to Slisz' assertions, would not have established bias or other motivation on the part of the government's witnesses.

■ Slisz also argues that because he was not connected with all of Chavis' companies, and was charged with only seven counts of mail fraud as compared to Chavis' twenty, initial joinder for indictment under Fed.R.Crim.Pro. 8(b) was improper. He further contends that he was irreparably prejudiced at trial, and his motion to sever under Fed.R.Crim.Pro. 14 was therefore improperly denied, because of the disparity in the amount of evidence introduced against him and that introduced against Chavis. With regard to the first of these contentions, Fed.R.Crim.Pro. 8(b) provides that joinder is proper if two or more defendants "are alleged to have participated in the same act or transaction or in the same series of acts or transactions...." Clearly this was the case here. Whether joinder for indictment under Rule 8(b) was proper is determined from the face of the indictment. *United States v. Grassi,* 616 F.2d 1295, 1302 (5th Cir.), *cert. denied,* 449 U.S. 956, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980). The critical inquiry is whether a "substantial identity of facts and participants" exists. *United States v. Levine,* 546 F.2d 658, 665 (5th Cir.1977). Here the indictment alleges a single scheme to defraud, carried out through the operations of the various Chavis companies, and clearly demonstrates the substantial identity of facts and participants required. The government need not charge all defendants in the same count or charge that each defendant participated in the same act. *United States v. Dennis,* 645 F.2d 517, 520 (5th Cir.), *cert. denied,* 454 U.S. 1034, 102 S.Ct. 573, 70 L.Ed.2d 478 (1981). Further Rule 8(b) itself provides that "all of the defendants need not be charged in each count." We find no reason to conclude that joinder was improper. With regard to the second contention, denial of a motion to sever is overturned only for abuse of discretion. *United States v. DeVeau,* 734 F.2d 1023, 1027 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985). To establish an abuse of discretion, the defendant must show "that he received an unfair trial and suffered compelling prejudice against which the trial court was unable to afford protection." *Id.* Simple disparity in the quantum of evidence introduced against co-defendants does not justify severance in the absence of this showing of prejudice. *United States v. Hogan,* 763 F.2d 697, 705 (5th Cir.1985). No such showing has been made here.

■ Finally, viewing the evidence in the light most favorable to the jury verdict, and deferring to the jury's credibility determinations, we find that the evidence was entirely sufficient to allow a reasonable trier of fact to find that Slisz' guilt was established beyond a reasonable doubt. *See United States v. Barrilleaux,* 746 F.2d 254, 256 (5th Cir.1984).

AFFIRMED.