Clarence Eugene **MIDDLEBROOKS**, Jr.,
Petitioner-Appellant,

v.

**UNITED STATES** of America,
Respondent-Appellee.

No. 71-2939
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 27, 1972.

Rehearing Denied April 20, 1972.

---

* ▮▮▮ Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

J. Russell Hornsby, Dale E. Anstine, Orlando, Fla., for petitioner-appellant.

John L. Briggs, U. S. Atty., Alan C. Todd, Orlando, Fla., for respondent-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

GOLDBERG, Circuit Judge:

Clarence E. Middlebrooks, Jr., was convicted in 1968 of using the mails to defraud in violation of 18 U.S.C.A. § 1341. United States v. Middlebrooks, 5 Cir. 1970, 431 F.2d 299, cert. denied, 1971, 400 U.S. 1009, 91 S.Ct. 569, 27 L. Ed.2d 622. In 1971, on the same day that he began to serve his sentence for the 1968 conviction, Middlebrooks moved in the lower court to vacate judgment and sentence pursuant to 28 U.S.C.A. § 2255. The district judge denied the motion, and Middlebrooks appeals essentially on two grounds: (1) that as a matter of law he did not knowingly and intelligently waive his right to counsel in his 1968 trial, and (2) that this 1968 trial should have been foreclosed by the doctrine of judgments loosely termed "collateral estoppel." Finding neither contention to have merit, we affirm the lower court's dismissal of the motion to vacate.

It appears that Middlebrooks was engaged in 1968 in the manufacture and sale of automotive turbine and super-charger "kits." In that capacity, he was investigated and indicted on 21 counts of mail fraud. At a hearing held prior to the 1968 trial and at the trial itself, Middlebrooks emphatically waived his right to counsel, stating at both times that he preferred to argue his own case. To compress the facts of that trial, Middlebrooks alleged harassment by the Post Office, lost, and was convicted and sentenced on 16 counts of the indictment. Having failed in his direct appeals and exhausted his motions to extend time prior to the commencement of sentence, Middlebrooks entered federal custody and immediately filed this section 2255 proceeding.[1]

Three of Middlebrooks' four allegations of error in the hearing below boil down to the assertion that he did not, as a matter of law, knowingly and intelligently waive his right to counsel in his 1968 trial. The standards applicable for evaluating intelligent and knowing waiver were sketched in Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S. Ct. 1019, 82 L.Ed. 1461:

"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

304 U.S. at 464, 58 S.Ct. at 1023. It is the conclusion of this court that the record supports the trial judge's conclusion that Middlebrooks was fully apprised of his rights and fully possessed of his faculties when he refused the assistance of counsel at his 1968 trial.

Middlebrooks had apparently been indicted and acquitted on a similar charge in 1958. It appears from the record that he took the opportunity of this second indictment in 1968 to vent his spleen at the Post Office. He rejected the district judge's proffer of counsel on two separate occasions because he felt that he could best "get his licks in at

---

1. The opinion of this court affirming Middlebrooks' conviction on direct appeal, United States v. Middlebrooks, *supra*, states that Middlebrooks' sentence was suspended. However, both briefs in this habeas corpus appeal indicate that Middlebrooks is presently incarcerated.

the Post Office" *personally* without the assistance of counsel. Whatever its wisdom, that is a reasonable exercise of Middlebrooks' freedom of choice. For his decision Middlebrooks can perhaps be faulted with poor judgment,[2] but the trial judge cannot on that evidence be faulted for failing to remind Middlebrooks quite adequately that he would be better advised to accept counsel. Rather, the trial judge in 1968 conducted a thorough inquiry into Middlebrooks' intentions and capacities. *See* Von Moltke v. Gillies, 1948, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309.

At his hearing in the court below, Middlebrooks also alleged that he was not mentally competent to intelligently and knowingly waive counsel at the time of his 1968 trial. To prove this assertion, Middlebrooks produced at the hearing a psychiatrist who testified that in his opinion Middlebrooks was "mentally ill" at the time of the earlier trial. The expert examined Middlebrooks on two successive days some three years after the initial trial on the merits and concluded that Middlebrooks was suffering from hypomania at the time of the interview and that, in the expert's opinion, Middlebrooks was also suffering from hypomania at the time of trial. Even though an expert's opinion and testimony are not to be disregarded, the decision regarding Middlebrooks' mental wherewithal as a matter of law is one that must be made by a court. Although the Government did not produce any contrary expert testimony at the hearing, that fact alone does not support Middlebrooks' assertion that the district judge below simply disregarded the expert's testimony. Taking all of the circumstances of this case into consideration, we agree with the district judge that the record does not support Middlebrooks' assertion that he lacked the mental competence for an effective waiver.

The Government relied in part on the transcript of the earlier trial and on Middlebrooks' overall behavior at that trial. In addition, the Government pointed out that Middlebrooks' actions before, during, and after the trial were not those of a man incapable of making an intelligent and knowing decision. Middlebrooks had been engaged in a reasonably complicated, even if questionable, business. It appears that Middlebrooks retained attorneys in other matters. After he had lost in the district court on his own, Middlebrooks retained various attorneys to pursue his direct appeals without raising at those times the issue of knowing and intelligent waiver of counsel. Following the failure of his direct appeals, Middlebrooks filed various motions for the purpose of extending the time before his sentence was to commence, which were granted. We do not find anything in the history of this case or in Middlebrooks' behavior with respect to the facts that gave rise to the original indictments that would support a conclusion that he was incapable of making an intelligent waiver. Finally, it appears to this court, as it did to the district court below, that the psychiatrist's testimony does not compel a conclusion that, as a matter of law, Middlebrooks was incapable in 1968 of knowingly and intelligently waiving his right to counsel. The expert saw Middlebrooks only twice within two days and did not have a complete medical and social history at the time. When asked by the district judge if Middlebrooks' hypomania rendered him incapable of making an intelligent decision, the expert answered in the negative. In fact, it appears that the expert relied rather heavily on the very fact that Middlebrooks did decline counsel in 1968 to establish his hypothesis of hypomania at that time, a conclusory analysis at best. Considering the entire testimony of the expert, it appears to this court that the

2. Perhaps Middlebrooks did not exercise such poor judgment after all. As the Government points out in its brief, Middlebrooks did manage to convince the jury in 1968 that he was not guilty of 5 of the 21 counts in the indictment. We cannot say at this point that counsel would have done a better job.

psychiatrist's testimony neither compels nor lends substantial support to the proposition that, as a matter of law, Middlebrooks could not have intelligently and knowingly waived his right to counsel in 1968.

 Middlebrooks also asserts that the doctrine of collateral estoppel should apply to vacate his 1968 conviction, since he had been indicted and acquitted of a similar offense in 1965. The doctrine of judgments that Middlebrooks argues here is inapposite to this set of facts. It is not enough to assert similarity of business and manner in the earlier acquittal, even if this record were sufficient to establish such similarity. A court must first examine what the first judgment actually determined and then see how that earlier determination affects the case in which collateral estoppel is urged. *See* United States v. Kramer, 2 Cir. 1961, 289 F.2d 909. The first judgment of acquittal in the Middlebrooks saga involved a different corporation, different victims, and a different factual context. In addition, the first judgment occurred a decade prior to the trial that has been questioned in this section 2255 appeal. A defendant cannot be allowed to engage in fraud forever simply by employing a few of the factors that might have been present in an earlier acquittal. It is always difficult to outline the precise perimeter of a prior judgment when the judgment was simply "not guilty," but we must conclude from the record before us that the acts under indictment in Middlebrooks' 1968 trial were of sufficient difference in character that the doctrine of collateral estoppel would not apply to bar later prosecutions. The two cases simply do not involve the same set of actions and facts. *See* Sealfon v. United States, 1948, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180.

It is the conclusion of this court that Middlebrooks simply has not made his case on the record before us that he did not knowingly and intelligently waive his right to counsel at his trial in 1968.

The most that this record will support is that Middlebrooks probably made an error in judgment, but the law does not protect him from that. The district court's denial of the motion to vacate judgment and sentence is affirmed.

Affirmed.