**Enoch F. McQUEEN, Jr., Petitioner-Appellant,**

v.

**Frank BLACKBURN, Warden, Louisiana State Penitentiary, et al., Defendants-Appellees.**

No. 83–4339.

United States Court of Appeals, Fifth Circuit.

March 28, 1985.

Enoch F. McQueen, Jr., pro se.

James D. Davis, Alexandria, La., Court-appointed, for petitioner-appellant.

J. Marvin Montgomery, Asst. Atty. Gen., Baton Rouge, La., T. Gerald Henderson, Alexandria, La., for defendants-appellees.

Before GEE, POLITZ and HIGGIN-BOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

In this appeal of the denial of 28 U.S.C. § 2254 habeas relief, Enoch F. McQueen contends that his state court conviction for aggravated burglary was constitutionally infirm because he was denied his sixth amendment right to the assistance of counsel when, toward the end of the third day of trial, at his insistence court-appointed counsel was relieved and the court declined to appoint replacement counsel. Finding no constitutional infirmity, and being convinced that under the circumstances McQueen knowingly and intelligently opted to represent himself, we affirm.

### Facts

McQueen's state court trial began on July 9, 1979. On the third day of trial, without forewarning McQueen informed the trial judge that he was dissatisfied with his court-appointed attorney, James Gravel, and wanted him dismissed. McQueen urged a litany of complaints including charges that Gravel had not prepared an adequate defense, knew nothing about the case, had filed no motions, had ignored his requests for trial objections, and was intoxicated in court. McQueen insisted that the judge ask the jurors their opinion of Gravel's sobriety.

Out of the presence of the jury, the trial judge listened to McQueen's complaints and Gravel's response concerning his conduct of the trial and the apparent reason for the tension which had developed between him and McQueen. Both assistant district attorneys present in the courtroom attested to Gravel's substantial abilities as a criminal defense lawyer. The trial judge critically assessed the charges of intoxication and professional inadequacy and rejected both. McQueen's request that the trial judge ask the jurors if they thought Gravel was intoxicated was denied. After an extended colloquy involving McQueen, the two assistant district attorneys, Gravel and the court, and sworn testimony from Gravel that he had not had a drink in three weeks, the court granted McQueen's motion to dismiss Gravel. But before relieving Gravel the court cautioned McQueen that the progress of the trial would not be impeded and the case would continue, that no new lawyer would be appointed (Gravel was third in the line of appointed counsel) and that McQueen, in representing himself, would be expected to conform to trial rules and procedures. McQueen persisted in his demand. Gravel was relieved as defense counsel. The trial resumed, McQueen was ultimately convicted and was sentenced to 30 years imprisonment.

After exhausting state remedies McQueen filed the instant federal habeas application. Following review of the petition, memoranda, and the entire record and transcript of all judicial proceedings in the state courts, the district court denied McQueen's petition for federal habeas relief.

The district court considered McQueen's primary complaint to be the charge that Gravel was intoxicated in court and was therefore ineffective. The state trial judge, in a unique position to evaluate this charge at the time it was lodged, not on the usual anecdotal evidence but on first-hand observation, rejected the charge out-of-hand. The district court found this rejection soundly based and added its first-hand observations of Gravel:

> This Court has on numerous occasions observed Mr. Gravel's ability in the courtroom. He is a well respected, conscientious, capable attorney. Mr. Gravel suffers from a very decided lisp, and often as part of his antics, appears to be a "country bumpkin" of a sort. The Court has on numerous occasions observed these antics as being most effective, in obtaining acquittals of numerous defendants.

The district court distilled the essence of the attorney/client problem thusly:

It becomes apparent from reviewing the transcript that petitioner [McQueen] was very unhappy with his appointed counsel, because Mr. Gravel was not conducting the defense as plaintiff thought he should. This confrontation between attorney and his client went to the absurd degree of the petitioner lecturing to his attorney on the proper method to conduct the defense of a criminal case.

In light of the foregoing, the district court concluded that McQueen unjustifiedly insisted on dismissal of his defense counsel and therefore could not complain that he had been denied assistance of counsel.

### Analysis

A defendant in a state criminal trial has the constitutional right to waive counsel and conduct his own defense. That decision must be knowingly and intelligently made. *McKaskle v. Wiggins*, — U.S. —, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). *Faretta* requires evaluation of the waiver of counsel under the analysis articulated in *Johnson v. Zerbst:*

The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused ... While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.

304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The determination is a practical one:

Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541, *quoting Adams v. United States ex rel. McCann*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

*Faretta's* progeny and related cases flesh-out the factors which are to be weighed in this process. The court must consider the defendant's age and education, *Mixon v. United States*, 608 F.2d 588 (5th Cir.1979), and other background, experience, and conduct. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; *Middlebrooks v. United States*, 457 F.2d 657 (5th Cir.1972). The court must ensure that the waiver is not the result of coercion or mistreatment of the defendant, *Blasingame v. Estelle*, 604 F.2d 893 (5th Cir. 1979), and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Raulerson v. Wainwright*, 732 F.2d 803 (11th Cir.1984).

The case before us underscores another factor which must be given due weight—the stage of the proceedings and the setting in which the waiver is advanced. In *Taylor v. Hopper*, 596 F.2d 1284 (5th Cir.1979), the defendant successfully sought dismissal of his court-appointed counsel after his state trial began. When he later sought federal habeas relief on the ground that he was denied assistance of counsel, we denied his application concluding, *inter alia*, that his insistence after the trial had begun that his counsel be dismissed was unjustified. Accordingly, he could not later complain that he had been denied his sixth amendment right to counsel.

The record reflects that McQueen was 37 years old at the time of trial and although

he had only an eighth grade education, his conduct prior to and during trial demonstrated more than a passing sophistication in criminal matters. McQueen informed the state court that Gravel had represented him in five prior burglary trials. McQueen fully understood the nature of the charges against him, the penalty he faced, and the realities of a trial. He knew what lay ahead of him. He told the court:

> ... this is a serious offense. It carries thirty years ... if I get convicted, Mr. White [the prosecutor] is going to charge me as a habitual offender, and I'm going to get a life sentence.

■ We agree with the district court. McQueen's insistence on dismissing Gravel was unreasonable. McQueen could not be forced to continue with counsel he did not want, but he had no sixth amendment right to an attorney who would blindly follow his instructions. As we stated in *United States v. Moore*, 706 F.2d 538, 540 (5th Cir.1983):

> A defendant is entitled to counsel capable of rendering competent, meaningful assistance in the preparation and trial of the pending charges, including appropriate evaluation and advice with reference to a plea of guilty. A defendant is not entitled to an attorney who agrees with the defendant's personal view of the prevailing law or the equities of the prosecutor's case. A defendant is entitled to an attorney who will consider the defendant's views and seek to accommodate all reasonable requests with respect to trial preparation and trial tactics. A defendant is entitled to appointment of an attorney with whom he can communicate reasonably, but has no right to an attorney who will docilely do as he is told. Every defendant is entitled to assistance of counsel dedicated to the proposition, and capable of assuring that the prosecution's case shall be presented in conformity with the Constitution, rules of evidence and all other controlling rules and practices. No defendant has a right to more.

■ McQueen argues that the court erred in refusing his request for standby counsel following dismissal of Gravel. While this is the preferred practice it is not mandatory. *McKaskle v. Wiggins,* — U.S. ——, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); *Faretta. See United States v. Young,* 482 F.2d 993 (5th Cir.1973). We have repeatedly cautioned that "trial courts must necessarily be wary of last minute requests to change counsel lest they 'impede the prompt and efficient administration of justice.'" *Moreno v. Estelle,* 717 F.2d 171, 176 (5th Cir.1983), *quoting Gandy v. Alabama,* 569 F.2d 1318 (5th Cir. 1978); *Bass v. Estelle,* 696 F.2d 1154 (5th Cir.1983); *United States v. Silva,* 611 F.2d 78, 79 (5th Cir.1980) ("Last minute requests are disfavored."); *United States v. Dilworth,* 524 F.2d 470 (5th Cir.1975); *United States v. Sexton,* 473 F.2d 512 (5th Cir. 1973).

McQueen stated that his unhappiness with counsel's performance began as soon as Gravel was appointed, more than three months before trial. Despite this McQueen waited until the afternoon of the third day of trial to voice his complaints. He offered no reason for the delay. To require the court to hold up the proceedings while new counsel became sufficiently familiar with the case would, under these circumstances, open the door to abuse of this valuable sixth amendment right by allowing it to be used "to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." *Bowman v. United States,* 409 F.2d 225, 226 (5th Cir. 1969). This we will not countenance.

■ We conclude that in the setting posed on the third day of trial, after being cautioned that no replacement counsel would be appointed, McQueen's insistence that Gravel be removed as defense counsel was the functional equivalent of a knowing and intelligent waiver of counsel.

■ The other complaints require little comment. It would have been inappropriate for the state trial judge to ask the jury their opinion of Gravel's sobriety. This would have been an improper inquiry into

the mental processes of the jury. Such inquiries post-verdict are not allowed. *United States v. Duzac*, 622 F.2d 911 (5th Cir.1980); *Llewellyn v. Stynchcombe*, 609 F.2d 194 (5th Cir.1980). Making this inquiry pre-verdict likewise would have been impermissible. The alleged intoxication of defense counsel is not the type of extraneous influence of which the court may appropriately inquire. Fed.R.Evid. 606(b); *Duzac; Stynchcombe.*

Finally, the general complaints that Gravel's professional performance was inadequate are not persuasive. Gravel explained his defense strategy and his reasons for not filing certain motions urged by McQueen. He explained why he had not objected to certain evidence. His comments were articulate, incisive, and reflected familiarity with the case. The recognition by the state trial judge and federal district judge of Gravel's ability and reputation as an experienced criminal defense lawyer, and the finding that he was effectively defending McQueen prior to his dismissal, is supported by the record. There is no evidence that Gravel's performance as trial counsel fell below the threshold established in *Strickland v. Washington,* — U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Rather, Gravel defended his client ably and tenaciously under difficult circumstances created by McQueen who lectured his counsel, filed pro se motions contrary to those advised by his attorney, and obviously thought his view of the best defense strategy was superior to that of his experienced criminal trial lawyer.

The decision of the district court is AFFIRMED.