Robert KALTENBACH

v.

Donald J. BREAUX, Sheriff.

Civ. A. No. 86–1871.

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

July 6, 1988.

Robert Kaltenbach, pro se.

J. Nathan Stansbury, Edward Broussard, Dist. Attys., Lafayette, La., William J. Guste, Jr., Atty. Gen., Baton Rouge, La., for Breaux.

## JUDGMENT

DUHE, District Judge.

 This matter was referred to United States Magistrate, Mildred E. Methvin, for her report and recommendation. After an independent review of the record in this case, the court concludes that the report and recommendation of the magistrate is correct and this Court adopts the conclusions of the magistrate.

IT IS ORDERED, ADJUDGED AND DECREED that the petitioner's application for writ of habeas corpus is DENIED and that this suit is DISMISSED.

## REPORT AND RECOMMENDATION

MILDRED METHVIN, United States Magistrate.

This habeas corpus petition was referred to me for the purpose of review, report and recommendation pursuant to this court's standing order of March 3, 1986.

Robert Kaltenbach filed this habeas corpus petition on August 26, 1986 alleging that he was being illegally and unconstitutionally detained at the Lafayette Parish Correctional Center at Lafayette, Louisiana. Thereafter, Kaltenbach was transferred to Hunt Correctional Center, and then released from state custody after serving a 90–day sentence. The state moved to dismiss this habeas petition as moot, but I denied the motion on July 16, 1987, finding that Kaltenbach remains "in custody" for the purpose of pursuing habeas corpus relief.

Kaltenbach was convicted of driving with no vehicle registration, driver's license, and motor vehicle inspection tag by the Honorable Ronald D. Cox in the Fifteenth Judicial District Court of Lafayette Parish, Louisiana on October 20, 1985. He was sentenced either to pay a fine plus court costs, or to serve a 30–day sentence on each conviction.

Kaltenbach applied for writs, which the Third Circuit denied on October 29, 1985. The Louisiana Supreme Court denied writs on December 20, 1985. The United States Supreme Court denied writs on April 21, 1986. Kaltenbach filed a petition for a writ of habeas corpus with the Fifteenth Judicial District Court, which denied his application after an evidentiary hearing on July 1, 1986. The Third Circuit Court of Appeals denied writs on July 22, 1986. The Louisiana Supreme Court denied writs on August 19, 1986.

The record shows that all available state remedies have been exhausted and that review of the merits before this court is proper. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). There is no necessity for an evidentiary hearing since the issues may be resolved by considering plaintiff's writ application, the state's answer, the briefs filed by the parties and the state records. *Brown v. Jernigan*, 622 F.2d 914 (5th Cir.1980); *Easter v. Estelle*, 609 F.2d 756 (5th Cir.1980). The Fifth Cir-

cuit has held that no evidentiary hearing is required where there are no contested issues of fact. *Passman v. Blackburn*, 797 F.2d 1335, 1340 (5th Cir.1986). There are none here.

The facts show that on April 27, 1985, Kaltenbach's 1976 van was stopped at a state trooper violation checkpoint. No motor vehicle inspection tag was found on the van. Kaltenbach produced a bill of sale, but no registration of the van, and no driver's license.

Kaltenbach raises four claims in this habeas corpus petition: 1) the trial court lacked subject matter and personal jurisdiction; 2) he was denied the right of compulsory process; 3) he was denied the right to present witnesses in his defense; and 4) he was denied the assistance of counsel of his choice.

## CHALLENGE TO JURISDICTION

Kaltenbach argues that the Fifteenth Judicial District Court lacked subject matter and personal jurisdiction. He contends that prior to his arrest he had rescinded all contractual links with the state, including voter's registration, marriage license, social security number, and driver's license number, and that consequently he is no longer a state citizen subject to state jurisdiction. At the trial on October 22, 1985, Kaltenbach stated:

> In this particular instance right here, we are dealing with the right to travel, and I've never given up my right to travel and accepted the state's privilege to drive. I am not a driver and my not being a driver and not having a driver's license and Title 32 not being positive law, the court has no jurisdiction over me or the subject matter.

Kaltenbach's contention that state citizenship arises from contractual agreements is without merit. The Fourteenth Amendment sets forth residence as the criteria for state citizenship: ·

> Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside.

U.S. Constitution, Amendment 14. Kaltenbach lists his address as Lafayette, Louisiana, and clearly resides within the boundaries of the State of Louisiana. He is, therefore, a Louisiana citizen, as well as a U.S. citizen.

Kaltenbach also contends that state regulations requiring driver's licenses, motor vehicle registration, and safety inspection tags violate his federally protected right to travel. The police power under the American constitutional system has been left to the states. *Keller v. United States*, 213 U.S. 138, 29 S.Ct. 470, 53 L.Ed. 737 (1909). Each state has the power, therefore, to regulate the relative rights and duties of all persons, individuals, and corporations within its jurisdiction for the public convenience and public good. *Escanaba Co. v. Chicago*, 107 U.S. 678, 2 S.Ct. 185, 27 L.Ed. 442 (1883). The only limit to state exercise of power in the enactment of police laws is that the laws shall not prove repugnant to the provisions of the state or national constitutions. All rights are subject to proper exercises of police power, and in a democracy, personal rights do not rise above the power of the public to regulate in the interest of the common welfare. It is well-settled that the enjoyment by the individual of his right of liberty is subject to such reasonable regulations and restraints as may be imposed by the state in the exercise of the police power "so long as the burden is not an arbitrary or unreasonable one" in order to preserve the health, safety, morals, and welfare of the community. *West Coast Hotel Company v. Parrish*, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1936). The rights of the individual are therefore subordinate to the welfare of the general public, and may be burdened by, and must yield to, proper and reasonable regulation.

The right to travel is not explicitly given by any one constitutional provision, but the United States Supreme Court has nonetheless treated the right as "fundamental." In *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), the Court invalidated the denial by two states and the District of Columbia of welfare benefits to residents who had not resided in the juris-

diction for at least a year. By requiring the one-year waiting period, the states were impairing the "fundamental right of interstate movement." The right derived from the fact that "the nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement." *Id.* at 629, 89 S.Ct. at 1328. Furthermore, what was being denied to newly arrived residents was something of extreme importance—welfare aid "upon which may depend the ability of the families to obtain the very means to subsist— food, shelter, and other necessities of life." Because of this major interference with freedom to travel, the court applied strict scrutiny, requiring that the one-year waiting period be necessary to achievement of a compelling governmental interest. The *Shapiro* Court did not clearly delineate the range of interferences to interstate travel which would trigger strict scrutiny.

In *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974), the Court struck down an Arizona requirement of one year's residence as a condition for indigents to receive free non-emergency medical care. The court held that the denial of the medical care was a "penalty" on the right to migrate and, as such, it was subjected to strict scrutiny. Not all differences in treatment between residents and non-residents are "penalties." Only inequalities in distribution of vital "government benefits and privileges necessary to basic sustenance" are sufficiently severe to be considered penalties. *Id.* at 259, 94 S.Ct. at 1082.

Other government-supplied benefits have been found to be less important, so that their denial to newcomers does not trigger strict scrutiny. For instance, the denial of lower tuition rates at state universities to new residents is not sufficiently basic to invoke strict scrutiny. *Starns v. Malkerson*, 326 F.Supp. 234 (D.Minn.1970), aff'd, 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971). The basic principle behind the right to travel cases is that a state may not treat newly arrived residents substantially less favorably with respect to the distribution of major governmental benefits, unless the scheme satisfies strict equal protection scrutiny.

Louisiana Revised Statute (LRS) 32:2 provides, in pertinent part:

A. The department, as an exercise of the police power of this state, shall supervise and regulate the state highway system and shall have the authority in its discretion to supervise and regulate all traffic on all highways within this state; promulgate rules and regulations not inconsistent with this Chapter and the general laws relative to highways ... and the operation of vehicles and pedestrians thereon....

Kaltenbach was convicted of failure to have a driver's license or a vehicle inspection tag. LRS 32:52 states that "no person shall drive or operate any vehicle upon any highway within this state unless and until he has been issued a license to so do as required by the laws of the state." LRS 32:53 provides that "no person shall drive a vehicle upon highways within this state ... unless and until such vehicle bears an inspection tag showing it to have been inspected and approved as required by the provisions of R.S. 32:1301–32:1310 ..." Kaltenbach has provided no evidence or compelling argument that the imposition of the above regulations on him as a state resident affects his constitutional right to travel. I conclude, therefore, that the right to travel as defined by the United States Supreme Court is inapplicable in the present situation where a state imposes similar conditions on the privilege of driving upon all who live within its borders, regardless of length of residency.

The state's requirements that all persons who operate motor vehicles on state highways possess a valid driver's license, safety inspection tag, and vehicle registration are valid exercises of the state's police power. The regulations are rationally related to the state's purpose in safeguarding the health and safety of its citizens, and the means employed by the state are rationally

related to the purpose of the statutes. Kaltenbach's first contention therefore has no merit.

## RIGHT OF COMPULSORY PROCESS

Kaltenbach contends that the state violated his right to compel the attendance of witnesses by charging Kaltenbach $50.00 for a witness subpoena and subpoena duces tecum. Louisiana Code of Criminal Procedure Article 738 provides that a defendant in a misdemeanor case shall be allowed to summon six witnesses at the expense of the parish. LRS 15:255 provides for the payment of a $25.00 witness fee to off-duty police officers called to testify in their official capacity. LRS 13:847 allows the Clerk of Court to charge 40 cents for subpoenas for witnesses and 75 cents for each subpoena duces tecum.

The Sixth Amendment preserves the right of a defendant *in a criminal trial* to have compulsory process for obtaining favorable witnesses. *Washington v. Texas.* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). The right to compulsory process is not absolute. *United States v. Whittington,* 783 F.2d 1210, 1218–19 (5th Cir.1986). It requires a showing that the witness' testimony would be both material and favorable to the defense. *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 873, 102 S.Ct. 3440, 3446, 3449, 73 L.Ed.2d 1193 (1982). Furthermore, the accused's right is limited both by evidentiary rules and by the state's legitimate interest in efficient trials. *See U.S. v. Davis,* 772 F.2d 1339, 1347–48 (7th Cir. 1985); *United States v. King,* 762 F.2d 232, 235 (2d Cir.1985).

Louisiana Code of Criminal Procedure Article 738 goes beyond the requirements of the Sixth Amendment protection in requiring free subpoenas in all misdemeanor cases. Despite the imposition of the $25.00 fee for off-duty policemen, I find no violation of compulsory process in this case.

Kaltenbach was driving a van with no safety sticker, no registration, and no driver's license. State Trooper Joseph SanSalvador testified on behalf of the state that he and his partner Tony Romero were in charge of the checkpoint and stopped the van. The record shows that Kaltenbach requested that a subpoena duces tecum be served on Lieutenant Clyde Breaux, Louisiana State Police, asking that he produce his notary appointment from the Governor, confirmation of appointment from the Senate, certificate of competency, copy of his notarial bond, and a copy of his oath of office. He further requested that Lieutenant Harold Guidry, Louisiana State Police, be subpoenaed as a witness to appear at trial. Neither of these officers were present when Kaltenbach was arrested. A violation of the state rule is not a *per se* violation of the right of compulsory process under the United States Constitution. Kaltenbach submitted no evidence either that the witnesses and documents requested were material to his case or that, had the subpoenas been granted, the evidence would be favorable to his defense. Kaltenbach's second contention is without merit.

## RIGHT TO CALL WITNESSES

Third, Kaltenbach contends that the trial judge's refusal to allow his witness to testify on his behalf violated his right to a fair trial. Wayne Borden was called as a witness on behalf of Kaltenbach and testified as follows:

THE COURT:
Raise your right hand.
MR. BORDEN:
I can't take an oath.
THE COURT:
You have to affirm.
MR. BORDEN:
I can't affirm either. I am unable to tell the difference between an oath and an affirmation.
THE COURT:
You won't be allowed to testify, sir have a seat.

Kaltenbach objected to the court's denial of Mr. Borden's testimony. He stated:

I'm entitled to have his testimony to help me show that I did offer to pay for those subpoenas, but I offered to pay for them with gold and silver coins and they refused ...

The court responded that Mr. Borden would have to either swear to tell the truth or affirm to the court that he was telling the truth in order to testify.

The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process. *Specht v. Patterson*, 386 U.S. 605, 610, 875 S.Ct. 1209, 1212, 18 L.Ed.2d 326 (1967); *Jenkins v. McKeithen*, 395 U.S. 411, 428–429, 89 S.Ct. 1843, 1852–1853, 23 L.Ed.2d 404 (1969); *Morrissey v. Brewer*, 408 U.S. 471, 488–489, 92 S.Ct. 2593, 2603–2604, 33 L.Ed.2d 484 (1972). These rights are among the minimum essentials of a fair trial:

> A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, at the minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.

*In Re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948).

A defendant's rights, however, may not be exercised in total disregard for established rules of procedure:

> In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.

*Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1972).

The requirement that a witness affirm that he is telling the truth is an established rule of procedure designed to assure fairness and reliability. Kaltenbach contends that the oath requirement was modified by the Louisiana Supreme Court in *Staton v. Fought*, 486 So.2d 745 (La.1986), where the court held:

> Instead of requiring an oath, the trial judge may permit the use of the following: "I, ——, do hereby declare that the facts I am about to give are, to the

best of my knowledge and belief, accurate, correct and complete.

*Id.* at 745. Judge Cox gave Borden the opportunity to affirm that his testimony would be truthful in the manner prescribed by *Staton*. Whether the requisite statement is termed an "affirmation," or a "declaration," is immaterial. Borden was given an alternative to the oath which he declined. Borden's failure to testify under these circumstances was no denial of defendant's right to a fair trial.

Neither was Kaltenbach prejudiced by Borden's failure to testify. Borden's proposed testimony had no relation to Kaltenbach's guilt or innocence of the alleged violation. Instead, he was called to affirm that Kaltenbach had offered to pay for subpoenas for two state police troopers with gold and silver coins. I find that the trial court denial of Borden's testimony did not deprive Kaltenbach of a fair trial. His third contention is therefore denied.

### ASSISTANCE OF COUNSEL

Kaltenbach contends, finally, that he was denied his Sixth Amendment right to counsel of his choice. Further, he contends that the trial court neither offered standby counsel nor qualified him for self-representation.

The Sixth Amendment provides that "[I]n all prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." The record shows that on April 29, 1985, the date of Kaltenbach's arrest, the Lafayette Parish Indigent Defendant Board appointed attorney Darlene Simmons to represent Kaltenbach. All submissions to the court after that date are signed by Robert Kaltenbach, as pro se litigant. The record does not indicate whether or not Ms. Simmons ever withdrew. Counsel was appointed, but apparently Kaltenbach failed to avail himself of her services. I therefore find no violation of his right to counsel on this ground.

Kaltenbach further contends that he was denied the right to the assistance of a non-attorney advisor at trial. At the hearing on October 22, 1985, Kaltenbach sought to have Byron Taylor allowed to act as his

advisor at trial. Taylor, who is not an attorney, stated that he was not there to represent Kaltenbach, but to assist him. The court allowed him to sit on the first row and to speak to Kaltenbach as necessary. Kaltenbach argues that the generic term "counsel" in the Sixth Amendment was deliberately chosen to encompass persons not likely to practice law. His linguistic analysis has been repudiated by every court that has considered the issue of whether the right to the assistance of "counsel" includes the right to representation by persons unlikely to practice law. E.g., *United States v. Grismore*, 546 F.2d 844, 847 (10th Cir.1976); *United States v. Whitesel*, 543 F.2d 1176, 1177–81 (6th Cir. 1976); *United States v. Kelley*, 539 F.2d 1199, 1201–03 (9th Cir.1976); *Turner v. Aba*, 407 F.Supp. 451, 477–78 (N.D.Tex. 1975); *United States v. Taylor*, 569 F.2d 448 (7th Cir.1977), *cert. denied*, 435 U.S. 952, 98 S.Ct. 1581, 55 L.Ed.2d 803 (1978). His argument is without merit.

In *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the Supreme Court ruled:

> We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.

*Id.* at 37, 92 S.Ct. at 2012. Although counsel was appointed the day that Kaltenbach was arrested, the attorney assigned to the case did not appear at his trial. Kaltenbach arrived with numerous prepared motions, including one requesting counsel of his choice. The trial judge denied the motion, and Kaltenbach proceeded to represent himself.

A defendant has the constitutional right to waive counsel and conduct his own defense, provided his decision is knowing and voluntary and "he is able and willing to abide by rules of procedure in courtroom protocol." *McKaskle v. Wiggins*, 465 U.S. 168, 173, 104 S.Ct. 944, 949, 79 L.Ed.2d 122, 127 (1984), *citing Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). For self-representation, a defend-

ant must "knowingly and intelligently" forego counsel and the request to proceed *pro se* must be "clear and unequivocal." *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir.1982) (*en banc*). Before granting the request, the trial judge must caution the defendant about the dangers of such a course of action so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 895, 95 S.Ct. at 2541. "In order to determine whether the right to counsel has been effectively waived, the proper increase to evaluate the circumstances of each case as well as the background of the defendant." *Wiggins v. Procunier*, 753 F.2d 1318, 1320 (5th Cir.1985); *United States v. Martin*, 790 F.2d 1215, 1218 (5th Cir.1986).

The Fifth Circuit has enumerated various factors which are to be weighed in this process:

> The court must consider the defendant's age and education, *Mixon v. United States*, 608 F.2d 588 (5th Cir.1979), and other background, experience, and conduct. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 [1938]; *Middlebrooks v. United States*, 457 F.2d 657 (5th Cir.1972). The court must ensure that the waiver is not the result of coercion or mistreatment of the defendant, *Blasingame v. Estelle*, 604 F.2d 893 (5th Cir.1979), and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Raulerson v. Wainwright*, 732 F.2d 803 (11th Cir.1984).

*McQueen v. Blackburn*, 755 F.2d 1174, 1177 (5th Cir.) *cert. denied*, 474 U.S. 852, 106 S.Ct. 152, 88 L.Ed.2d 125 (1985).

Applying these factors, I find that although Kaltenbach informed the court through numerous motions that he refused to waive any rights granted to him under the Constitution, including the right to counsel of his choice, there is no indication that he intended to be represented by qualified court-appointed counsel. On the con-

trary, he asserted early in the proceedings his right to a non-attorney advisor. A review of Kaltenbach's motions shows that they are frivolous and unsupported by any relevant legal authority. He listed his occupation as "teacher," and demonstrated more than a passing sophistication in criminal and constitutional matters. The nature of the charges and penalties were fully printed on the reverse side of the ticket issued to him the day he was arrested. He understood the penalty he faced. The offenses were "serious" only to the extent that Kaltenbach would be incarcerated upon failure to pay his fine.

I conclude that under the particular circumstances of this case, Kaltenbach's insistence that a non-attorney should represent him at trial was the functional equivalent of a knowing and intelligent waiver of counsel. *See McQueen v. Blackburn,* 755 F.2d 1174 (5th Cir.1985). I agree with the Seventh Circuit that Kaltenbach "may not manipulate his right to counsel to undermine the orderly procedure of the court or subvert the administration of justice." *United States v. Thibodeaux,* 758 F.2d 199 (7th Cir.1985). Kaltenbach's persistence in refusing to accept any counsel except that of his own choosing and his insistence on proceeding *pro se* can only be construed as a knowing and intelligent waiver of counsel. *United States v. Brown,* 591 F.2d 307 (5th Cir.), *cert. denied* 442 U.S. 913, 99 S.Ct. 2831, 61 L.Ed.2d 280 (1979); *United States v. Moore,* 706 F.2d 538 (5th Cir. 1983). In *Moore,* the Fifth Circuit held that the trial court could proceed to trial with the defendant representing himself and noted that the preferred practice was to offer the assistance of standby counsel. However, Kaltenbach has no constitutional right to standby counsel. *McKaskle v. Wiggins, supra* 465 U.S. at 183, 104 S.Ct. at 953.

For the foregoing reasons, it is recommended that petitioner's application for habeas corpus relief be denied and that this suit be dismissed.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) days from receipt of this report and recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling. FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATION CONTAINED IN THIS REPORT WITHIN TEN (10) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS ON APPEAL.

Lafayette, Louisiana, this 20th day of June, 1988.