John E. Britain was the maintenance supervisor for the Alabama State Docks in Mobile. He was indicted and convicted for two violations of the Alabama Ethics Act, § 36-25-5, Code of Alabama 1975. In each case, he was sentenced to five years' imprisonment, fined $5000, and ordered to pay $25 to the Alabama Crime Victims Compensation Fund. He was also convicted of second degree theft of property by deception in violation of § 13A-8-4, sentenced to ten years' imprisonment, and ordered to pay $1000 in restitution to the State Docks and $25 to the Crime Victims Compensation Fund. The sentences in the ethics violation cases were ordered to run concurrently with the sentence in the theft case.
 I
The defendant's motion for judgment of acquittal was properly denied because the State presented a prima facie case of each crime charged.
The substance of Counts I and III was that the defendant caused invoices for topsoil, dirt, and shells to be submitted to and paid by the State Docks when those materials were actually delivered to the defendant's residence for his personal use. There was testimony that the defendant was the supervisor of the maintenance department at the State Docks and that he had the authority to order and sign for materials in an unlimited dollar amount. John L. Maples, the owner of a hauling company that did business with the State Docks, testified that in the latter part of 1983 or the early *Page 200 
part of 1984 his company delivered "three to five" truckloads of topsoil and "three to five" truckloads of clam shells to the defendant's residence. The price of the dirt was between $150 and $200 per load. The shells were around $300 per load. Maples testified that the defendant did not pay for this material but told him "to just make up some invoices as we normally do with the State Docks and send them down there at various increments dated various different dates and he would sign the tickets accordingly." The different dates were "so that [the invoices] would blend in with the actual materials that were ordered for the State Docks." Maples testified that "we were requested to make up some bogus invoices and send them to the State Docks for payment." He stated that he was paid by the State Docks for the loads delivered to the defendant's residence.
Maples' testimony was corroborated by that of David Cannon and Bobby Broglen, truck drivers for Maples Hauling Company. Cannon testified that during the latter part of 1982 and in 1983 he delivered three truckloads of topsoil and one load of shells to the defendant's residence. The defendant was present on two of these deliveries. He stated that, on instruction from Mr. Maples, "the next time that we would take a load down [to the State Docks], we would take two or three extra tickets with us and get them signed. And we kept doing this until we got all the tickets signed to take care of the amount of dirt that was sent to his home." Cannon testified that the defendant signed several tickets.
Broglen testified that in late 1983 he delivered one load of shells to the defendant's home. The defendant was home when the shells were delivered.
Howard McKenzie, the assistant director of the Alabama Ethics Commission, testified that the statements of economic interest filed by the defendant for 1982 and 1983 did not indicate that the defendant had received any shells or dirt from Maples Hauling.
Although the State did prove that the defendant did sign a number of invoices showing the delivery of "base clay" by Maples Hauling Company to the State Docks, there was absolutely no proof of which invoices were "bogus" and for the material actually delivered to the defendant's residence. Although there was no documentary proof that the defendant signed any "bogus" invoice, there is considerable circumstantial evidence to support that factual finding.
However, since no count of the indictment specifically charged the defendant with actually signing a false invoice, the State was not required to prove that the defendant actually signed a false invoice as an element of proof that he used his official position for personal gain or that he was guilty of theft by deception.
Count II charged that the defendant used his official position as maintenance supervisor to obtain the labor and services of State Docks employees under his supervision for his direct personal financial gain.
Two employees of the State Docks testified that the defendant was their supervisor and that they worked on the defendant's boat or home while they were being paid for working at the State Docks. Roy Cox testified that he worked on the construction of the defendant's shrimp boat and boat slip from 1981 through 1984. James King testified that he worked on the defendant's boat and house during the years from 1981 to 1983. This testimony presented a prima facie case of the violation of the State Ethics Act charged in Count II of the indictment.
A third state employee, John Hobbs, also testified. However, Hobbs testified that when he worked at the defendant's residence in 1979, 1980, or 1981 he was not paid by the State Docks because he would take vacation time or accumulated leave time. Hobbs' testimony did not establish any violation of the State Ethics Act.
The fact that some of the State's evidence was contradictory and conflicting does not negate the fact that the State did present a prima facie case of each crime charged in the indictment.
 " 'The effect of contradictory and inconsistent statements goes to the credibility *Page 201 
of the witness and is a question for the jury.' Magro v. State, 384 So.2d 871, 874 (Ala.Cr.App.), cert. denied, Ex parte Magro, 384 So.2d 875 (Ala. 1980). '[A] jury may believe part of the evidence of a witness and reject part.' . . . 'Inconsistencies and contradictions in the testimony of a witness do not make it inherently improbable.' . . . 'The inconsistencies may impair the credibility of the witness and reduce the weight of the testimony, but they do not destroy the probative force of the testimony as a matter of law.' Jones v. State, 469 So.2d 713, 716-17
(Ala.Cr.App. 1985)." Yeager v. State, 500 So.2d 1260, 1263 (Ala.Cr.App. 1986).
 II
The trial judge properly charged the jury that, with regard to Count III of the indictment charging theft by deception of "money or checks the property of the Alabama State Docks," they could consider "any acts that occurred subsequent to October 1 of 1979."
The statute of limitations for theft is three years, §15-3-1, Code of Alabama 1975, unless the prosecution is "for conversion of the state . . . revenue," in which case the statute of limitations is six years. § 15-3-3.
Violation of the Alabama Ethics Act is a felony, §36-25-27(a), to which applies the three-year statute of limitations applicable to felonies in general. § 15-3-1.
The indictment was returned in October of 1985. This tolled the statute of limitations. § 15-3-7. As set out in Issue I, there was sufficient evidence of the defendant's criminal activities in 1982, 1983, and 1984 alone to sustain convictions for all three counts in the indictment.
 III
The trial judge properly denied the defendant's request for a mistrial. State's witness Roy Cox, a State Docks employee, testified that, after the investigation into the defendant's criminal activities began, the defendant told him "to do [his] job and keep [his] mouth shut or somebody else could be found floating in the river." The trial judge overruled defense counsel's objection that "[t]here is no charge of this sort of thing in this case," but directed the prosecutor to "lay a predicate as to time."
When Cox testified that the statement was made "in the latter part of '81," the trial judge "sustain[ed] the objection to the statement about the river because of the time factor" and instructed the jury to disregard that threat.
Defense counsel requested a mistrial which the trial judge denied "because the Court had required the State to lay a predicate and sustained the objection and instructed the Jury to disregard it and I don't feel that it is not capable of being put out of the Jury's mind. And I think they have been sufficiently instructed." There was no objection to the judge's instructions or request for further instruction.
"A crucial assumption underlying that system [of trial by jury] is that juries will follow the instructions given them by the trial judge. Were this not so, it would be pointless for a trial court to instruct a jury, and even more pointless for an appellate court to reverse a criminal conviction because the jury was improperly instructed." Parker v. Randolph,442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (1979). "The 'rule' — indeed, the premise upon which the system of jury trials functions under the American Judicial System — is that juries can be trusted to follow the trial court's instructions." Id.,442 U.S. at 74, n. 7, 99 S.Ct. at 2140, n. 7. See also Francisv. Franklin, 471 U.S. 307, 325, n. 9, 105 S.Ct. 1965, 1976, n. 9, 85 L.Ed.2d 344 (1985). "The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process." Richardson v. Marsh, ___ U.S. ___,107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987).
It must be presumed that the jury followed the judge's instructions. Kennedy *Page 202 v. State, 472 So.2d 1092, 1105 (Ala.Cr.App. 1984), affirmed, Exparte Kennedy, 472 So.2d 1106 (Ala.), cert. denied, Kennedy v.Alabama, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985). "There is a prima facie presumption against error where the trial court immediately charges the jury to disregard improper remarks or answers." Wadsworth v. State, 439 So.2d 790, 793
(Ala.Cr.App. 1983), cert. denied, 466 U.S. 930, 104 S.Ct. 1716,80 L.Ed.2d 188 (1984).
A motion for a mistrial "is addressed to the sound discretion of the trial court, and its ruling will not be reversed in the absence of a clear showing of abuse of discretion." Ex parteJefferson, 473 So.2d 1110, 1114 (Ala. 1985), cert. denied,Jefferson v. Alabama, ___ U.S. ___, 107 S.Ct. 328,93 L.Ed.2d 300 (1986). Although each case must be decided upon its individual merits, Williams v. State, 245 Ala. 32, 36,15 So.2d 572 (1943), the general rule is that a motion for a mistrial is properly denied where the trial court instructs the jury to disregard. Lee v. State, 265 Ala. 623, 628, 93 So.2d 757
(1957); Drake v. State, 257 Ala. 205, 207, 57 So.2d 817 (1952);Coats v. State, 253 Ala. 290, 295, 45 So.2d 35 (1950), even where the trial court initially ruled the objectional testimony admissible; Parsons v. State, 251 Ala. 467, 478, 38 So.2d 209
(1948).
 IV
On direct examination of the defendant, defense counsel attempted to establish that there had been extensive pretrial publicity surrounding the prosecution of the defendant. Counsel represented to the trial judge that he was "really showing . . . a motivation for the prosecution, . . . beyond any possibility of wrongdoing by the Defendant." The alleged motivation for the prosecution was "to get newspaper name publicity for [the Attorney General]* and his political campaign [for governor]."
The trial judge properly ruled that the issue of pretrial publicity was "irrelevant to the issues before the court," and refused to allow defense counsel to pursue that "theory of defense."
In some cases, the conduct of the investigating officers and prosecuting officials may constitute admissible evidence.Blackmon v. State, 246 Ala. 675, 682, 22 So.2d 29 (1945) ("The jury had the right to duly regard the acts of the officials in the line of their duty, and counsel had the right to duly comment on the testimony of such investigating officials in the light of their duty and zeal, or the lack thereof, as exhibited by the evidence, within the rules that obtain."). However, in this case, no prosecuting or investigating officer testified. See Miller v. State, 16 Ala. App. 3, 74 So. 840 (1917), overruled on other grounds, Stewart v. State, 18 Ala. App. 92,89 So. 391, 395 (1921).
"The chief test [of the admissibility of evidence] is relevance and materiality." O'Brien v. United States,411 F.2d 522, 524 (5th Cir. 1969). Here, evidence of the State's motive for prosecuting the defendant was not relevant to any material issue in the case. See Shuttlesworth v. City of Birmingham,42 Ala. App. 296, 298, 161 So.2d 796 (1963), cert. denied, 276 Ala. 707, 161 So.2d 799 (1964), reversed on other grounds,382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965) (evidence of publicity given to a federal hearing "irrelevant and immaterial" to issues involved in a state prosecution for loitering).
Even if the prosecution did engage in the practice of disseminating pretrial publicity prejudicial to the defendant, that effort, despite its reprehensible character, had no relation to the trial of the issue of the defendant's guilt or innocence. As defense counsel stated, the motivation for the prosecution went "beyond any possibility of wrongdoing by the Defendant."
The remedy for prejudicial publicity is either a motion to dismiss, a motion for a change of venue, or a request for a mistrial. The cases make it clear that the issue of whether or not publicity either before or during trial has prejudiced jurors and violated a defendant's right to an impartial jury is a mixed question of law and fact for determination by the trial court. Patton v. Yount, 467 U.S. 1025, 104 S.Ct. 2885,81 L.Ed.2d 847 (1984). *Page 203 
 V
The defendant's motion for new trial was properly denied without an evidentiary hearing. Among the twenty grounds for the motion were the following: "that the jury verdict was tainted by pretrial publicity and publicity contemporaneous with the trial," and "that the jury verdict was not based upon evidence or the law but on outside influence." No supporting facts were alleged in the motion and the motion was not verified.
"Assertions of counsel in an unverified motion for new trial are bare allegations and cannot be considered as evidence or proof of the facts alleged." Smith v. State, 364 So.2d 1, 14
(Ala.Cr.App. 1978). "Error may not be predicated upon the overruling of a motion for new trial where there was no evidence offered in support of the motion." Tucker v. State,454 So.2d 541, 547-48 (Ala.Cr.App. 1983), reversed on other grounds, Ex parte Tucker, 454 So.2d 552 (Ala. 1984). Additionally, the record contains no objection to the fact that the motion was denied without a hearing.
 VI
We find no instance of prosecutorial misconduct alleged by the defendant which constitutes reversible error.
 A.
Prior to trial, the defendant filed a general motion for discovery requesting "Brady material." The prosecution voluntarily supplied the defendant with one written exculpatory statement of Roy Cox and one written exculpatory statement of James King. Under Brady v. Maryland, 373 U.S. 83, 87,83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), this was all the evidence the State was required to produce. United States v. Starusko,729 F.2d 256, 260 (3rd Cir. 1984) ("Evidence impeaching the testimony of a government witness is exculpatory when the credibility of the witness may be determinative of a criminal defendant's guilt or innocence.").
Apparently, the State did not inform the defendant that both Cox and King had given additional statements which were inculpatory and incriminated the defendant. We find no allegation that the prosecution actually told the defendant that Cox and King had only given one statement each.
At trial, after each witness had testified, defense counsel complained of the State's failure to produce the additional inculpatory statements and alleged that "we have kind of been led down a garden path here" and "lulled into a false sense of security."
The State then furnished the defendant with the other statements of Cox and King. The trial judge denied the objection "after the Defendant's attorneys have had sufficient time to review the additional statements . . . that were voluntarily furnished by the State." On cross-examination of Cox and King, defense counsel took full advantage of the written conflicting statements given by both witnesses.
"[T]he general rule [is] that an accused is not entitled to discover statements of government witnesses before trial."Ex parte Pate, 415 So.2d 1140, 1144 (Ala. 1981). With exceptions that are not applicable in this case, Rule 18.1, Alabama Rules of Criminal Procedure (Temporary), provides that the defendant shall not be entitled to inspect statements made by State witnesses. Rule 18.1(c)(1) and (e).
 B.
We have carefully examined each specific instance of prosecutorial misconduct alleged by the defendant. In most of the cited instances, the trial court sustained the defendant's objection. In some instances, the trial court found no impropriety. In other instances, the trial judge cautioned the prosecutor and instructed the jury to disregard the objectionable matter. While this Court cannot approve of the prosecutor's conduct in every instance, we find that it does not constitute reversible error either because of the corrective action taken by the trial judge or because the conduct itself, while subject to criticism, is not so egregious as to warrant the severe and extreme remedy of granting a new trial.
 VII
At trial, the defendant objected to the introduction by the State of the "tickets" used by Maples Hauling Company in *Page 204 
making deliveries to the State Docks. The prosecution could not prove which tickets were legitimate and which were "bogus" tickets for material actually received by the defendant for his personal use. Despite this fact, the tickets were properly admitted into evidence because they tended to demonstrate the manner in which the charged criminal activity occurred. They showed how the State was defrauded, reflected the testimony of the witnesses, and constituted demonstrative evidence explanatory of the offense. Shiflett v. State, 38 Ala. App. 662,665, 93 So.2d 523, cert. denied, 265 Ala. 652, 93 So.2d 526
(1957). "Models, replicas and duplicates of tangibles that figured in the transaction or occurrence under litigation may be displayed to aid the factfinder's understanding of oral testimony." W. Schroeder, J. Hoffman, R. Thigpen. AlabamaEvidence § 11-4(a) (1987).
We have examined the other issues raised by the defendant and find that in each case, either the alleged error was not preserved for review by proper objection or the subject of the objection simply does not constitute error.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
* Reporter's Note: This reference to the attorney general is not a reference to Attorney General Siegelman.