The plaintiffs, Frank Lambert, Greg Oakley, Roberta T. Jordan, David Wright, and Earnest Boyd (hereinafter "Taxpayers"), appeal from a judgment in favor of the defendants, the Wilcox County Commission and four of its members in their individual and official capacities[1]
(hereinafter "Commission"), in an action for a declaratory judgment and injunctive relief. The Taxpayers sought a declaration of the legality of the Commission's adoption of a county ordinance increasing the sales tax in Wilcox County by one-half cent for one year and an injunction against implementation of the ordinance. The one dispositive issue raised by the Taxpayers is whether a member of the Wilcox County Commission, employed as a bus driver by the Wilcox County Board of Education, was prohibited by the Alabama Ethics Law from voting on a sales tax increase benefiting the County Board.
The undisputed facts are as follows. On January 27, 1992, the Wilcox County Commission considered a proposal to levy a one-year, one-half cent sales tax in order to refinance a bond issue authorized years earlier for the construction of a high school. The purpose of the proposal was to take advantage of then lower interest rates. Pursuant to its authority under § 40-12-4, Alabama Code 1975, the Commission adopted the ordinance, by a vote of 3-2.[2]
One of the county commissioners voting with the majority was Darryl Perryman, who was employed as a bus driver by the County Board. Before voting on this proposal, Darryl Perryman asked S.E. Collier, superintendent of the County Board, whether funds raised from the sales tax increase would become part of the general fund from which his salary as bus driver was paid. Collier informed Perryman that his salary was not paid from the general fund and that the funds raised by the sales tax increase would be used only to retire the bond issue.
The Taxpayers filed an action for declaratory judgment and injunctive relief, alleging *Page 729 
that because Perryman was an employee of the County Board, he was ineligible, under § 36-25-5(a), Ala. Code 1975, to vote on the proposed ordinance. The Taxpayers argued in the trial court that because Perryman was ineligible to vote, under the Alabama Ethics Law, there were not enough votes to pass the ordinance and the ordinance was, therefore, invalid or void. The Taxpayers sought a judgment enjoining implementation of the ordinance and prohibiting Perryman and "any other Commissioner employed by the Wilcox County Board of Education from voting on future Wilcox County School System Appropriations." After a nonjury trial, the court entered a judgment on March 17, 1992, in favor of the Commission, holding that Perryman's vote on the proposed sales tax increase did not violate the Alabama Ethics Law because Perryman had received no direct, personal, financial gain from his action. On April 3, 1992, the Alabama Ethics Commission issued an advisory opinion stating that there was probable cause to believe that Perryman violated the Ethics Law and that the Commission was reporting the case to the Wilcox County district attorney for appropriate legal action. On April 10, 1992, the Taxpayers filed a "Motion to Alter or Amend Judgment," supported by the April 3, 1992, advisory opinion. The trial court denied this post-trial motion, and the Taxpayers appealed.
The general issue raised by the Taxpayers is whether Perryman had a disqualifying conflict of interest under § 36-25-5(a), Ala. Code 1975, and was therefore ineligible to vote on the proposal to increase the sales tax.
Section 36-25-5(a) provides:
 "(a) No public official or employee shall use an official position or office to obtain direct personal financial gain for himself, or his family, or any business with which he or a member of his family is associated unless such use and gain are specifically authorized by law."
The Taxpayers argue that Perryman was ineligible to vote, because, as a County Board of Education employee, he obtained "direct personal financial gain for himself" by voting on a school funding measure. In the alternative, the Taxpayers argue that Perryman's employer, the County Board of Education, constitutes a "business with which he . . . is associated," and that § 36-25-5(a) therefore prohibits him from voting on a proposed ordinance that will result in direct financial gain to the County Board.
In construing § 36-25-5, this Court is aided by certain rules of statutory construction:
 "The fundamental rule of statutory construction is that this Court is to ascertain and effectuate the legislative intent as expressed in the statute. League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). In this ascertainment, we must look to the entire Act instead of isolated phrases or clauses; Opinion of the Justices [No. 153], 264 Ala. 176, 85 So.2d 391 (1956), and words are given their plain and usual meaning. Adams v. Mathis, 350 So.2d 381 (Ala. 1977). Moreover, just as statutes dealing with the same subject are in pari materia and should be construed together, League of Women Voters, supra, parts of the same statute are in pari materia and each part is entitled to equal weight."
Darks Dairy, Inc. v. Alabama Dairy Comm'n, 367 So.2d 1378,1380-81 (Ala. 1979).
The first question raised by the Taxpayers' argument is whether Perryman obtained any "direct personal financial gain for himself" within the meaning of § 36-25-5(a) by voting on the sales tax ordinance. In Opinion of the Justices No. 317,474 So.2d 700 (Ala. 1985), the Justices answered a request for an advisory opinion dealing with similar issues. Two of the questions presented were (1) whether it was constitutional under § 82 of the Alabama Constitution of 1901 for members of the state House of Representatives who were employed or whose spouses were employed by the public educational system to vote on a bill granting pay increases to teachers and other employees and (2) whether such action violated § 36-25-5(a).
Section 82 of Article IV of the Alabama Constitution of 1901 provides:
 "A member of the legislature who has a personal or private interest in any measure or bill proposed or pending before the legislature, shall disclose the fact to the *Page 730 
House of which he is a member, and shall not vote thereon."
Deciding only the issue relating to § 82, the Justices expressed the opinion that "it is constitutional for an educator/legislator to vote on a pay raise for teachers, at least so long as the bill does not affect the legislator in a way different from the way it affects the other members of the class to which he belongs." Opinion of the Justices No. 317, 474 So.2d at 704. The Justices construed the phrase "personal or private interest" in § 82 to mean "an interest affecting the legislator individually or as a member of a small group." Id.
at 704. The Justices, however, declined to answer whether the actions of educator legislators violated § 36-25-5(a), on the ground that the question involved the construction of a statute that had already passed the legislature, not the constitutionality of pending legislation. Id. Nevertheless, the Justices noted that their analysis of § 82 "would appear to apply to 'direct personal financial gain' in § 36-25-5(a)." Id.
The authorities discussed and the analysis set forth inOpinion of the Justices No. 317, supra, in regard to § 82 of the Constitution also establish that the phrase "direct personal financial gain" in § 36-25-5(a) can only mean, as regards the facts of this case, "an interest affecting the legislator individually or as a member of a small group." Supporting this construction of the statute are the language of § 36-25-5(a), its legislative history, and the legislature's avowed intent that the Ethics Law balance various public policy objectives. First, we note that by its own language §36-25-5(a) prohibits only those uses of official positions or offices that result in financial gain that is "direct" and "personal."
Second, changes to § 36-25-5(a) made by 1975 Alabama Acts, No. 130, show inter alia that when the legislature amended and reenacted the Ethics Law in 1975, it intended to define more narrowly the class of private interests giving rise to a potential conflict with a public official's or public employee's duties. Act No. 130 amended § 36-25-5(a) by adding the words "direct" and "personal" to qualify "financial gain."[3]
Before the enactment of Act No. 130, § 3 of the Ethics Law, now codified, as amended, at § 36-25-5(a), provided as follows:
 "No public official or employee shall use an official position or office to obtain financial gain for himself, or his family, or any business with which he or a member of his family is associated unless such use and gain are specifically authorized by law."
Moreover, our interpretation of "direct personal financial gain" strikes the balance intended by the legislature between the policy of eliminating conflicts of interest and the policy of recruiting and retaining those persons best qualified to serve in government. In § 36-25-2(b), the legislature states that while the purpose of the Ethics Law is to eliminate conflicts between the private interests of public officials or employees and their public duties as such, the "legal safeguards against conflicts of interest must be so designed as not unnecessarily or unreasonably to impede the recruitment and retention by the government of those men and women who are best qualified to serve it." Any broader view of "direct personal financial gain" would seriously impair not only the ability of county commissions to attract and retain qualified officials, but also their ability to deal with fiscal problems generally. In Opinion of the Justices No. 317, supra, the Justices noted, in their analysis of § 82, the consequences of a broad interpretation of "personal or private interest":
 "Under the construction that this language meant any financial interest, every legislator would have a personal interest in many bills. Should a legislator be prohibited from voting on a tax reduction bill because the legislator pays taxes? Should a legislator who is a bank officer be prevented from voting on a bill affecting interest rates? Should a legislator who owns real property be prohibited from voting on ad *Page 731 valorem taxation? These and similar hypotheticals show why Section 82 cannot reasonably be construed to prevent legislators from voting on any bills which will benefit them financially without regard to how many other persons similarly situated will similarly benefit.
 "Most legislators have other occupations which they continue after they are elected. As H.R. 20 states, 'the occupation of members of the House was an issue in many of the campaigns leading to their election.' As the Alabama Ethics Commission itself said in 1981 in Advisory Opinion No. 530:
 " 'The present legislators come from many and varied occupational and professional groups. They campaign openly in their districts with the overwhelming majority of the voters fully aware of the manner in which they earn a living. Voters who elect an educator, whether a teacher or administrative employee, must be aware that their newly-elected representative or senator will confront an education budget. If the voters did not wish that candidate to vote on the education budget because of his professional background, then the proper course of action would be to elect his opponent. Of course, the educator-legislator is not expected to come to the legislature with a bill which would increase his income to the exclusion of all others in his chosen field. The reasonable expectation is that his vote will be cast for the public good rather than for his own narrow, restricted private interest.' "
474 So.2d at 704.
Therefore, in the circumstances of this case, Perryman did not obtain any "direct personal financial gain for himself" by voting on a measure that would have the general effect of increasing funding for public education. The measure neither affected Perryman as an individual or as a member of a small group nor affected him in a way different from the way it affected other members of the class to which he belonged.
The second question raised by the Taxpayers' argument is whether Perryman was ineligible to vote on an ordinance conferring a financial benefit on his employer, the Wilcox County Board of Education. To address this issue, we must first consider whether the Wilcox County Board of Education is a "business with which [Perryman] is associated" under § 36-25-5.
Section 36-25-1(2) defines a "business with which he is associated" as "[a]ny business of which the person or a member of his family is an officer, owner, partner, employee or holder of more than 10 percent of the fair market value of such business." Section 36-25-1(1) defines a "business" as "[a]ny corporation, partnership, proprietorship, firm, enterprise, franchise, association, organization, self-employed individual and any other legal entity."
Applying the doctrine of "ejusdem generis," we decline to construe the § 36-25-1(1) definition of "business" to encompass the Wilcox County Board of Education. "Ejusdem generis" is a general principle of statutory construction under which general words, following the enumeration of particular classes of persons or things, are construed to apply only to persons or things of the same general nature or class as those specifically enumerated. Flav-O-Rich, Inc. v. City ofBirmingham, 476 So.2d 46 (Ala. 1985). Under § 36-25-1(1), the enumerated classes of things preceding the general term "any other legal entity" are in the nature of private enterprises, not county governmental agencies. We do not believe that the legislature intended to include county governmental agencies in the § 36-25-1(1) definition of "business." Therefore, Perryman's vote on the ordinance conferring a financial benefit on his employer, the Wilcox County Board of Education, does not violate the prohibition against obtaining a financial benefit for a "business with which he is associated."
Perryman, a Wilcox County commissioner and employee of the Wilcox County Board of Education, obtained no "direct personal financial gain," either for himself or for a "business with which he is associated," when he voted on the measure to augment county public educational funding with a one-year, *Page 732 
one-half cent sales tax increase. We therefore affirm the judgment.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] The Wilcox County Commission consists of six members, of whom four are named defendants in this case: Bobby Jo Johnson, chairman; Darryl D. Perryman, vice chairman; Percy L. Hale; and Elijah Shaw III. The other members, not parties to this action, are J.C. Martin and James R. Jackson.
[2] Bobby Jo Johnson, Elijah Shaw III, and Darryl Perryman voted in favor of the proposal. James R. Jackson and J.C. Martin voted against it. Percy L. Hale abstained.
[3] Act No. 130 also added a new subsection to § 3, now codified at § 36-25-5(b), providing as follows:
 "(b) Unless prohibited by the Alabama Constitution, nothing herein shall be construed to prohibit a legislator from introducing bills and resolutions, serving on committees or from making statements or taking action in the exercise of his legislative duties."