United States Court of Appeals,

Eleventh Circuit.

No. 95-6260.

Harold Guy HUNT, Petitioner-Appellant,

v.

Kenneth TUCKER, Winifred Smithson, John S. Nettles, Judith C. O'Connor, Louie S. Grimes, Respondents-Appellees.

Aug. 29, 1996.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV-94-N-1851-NE), Edwin L. Nelson, Judge.

Before TJOFLAT, Chief Judge, and RONEY and CAMPBELL[*], Senior Circuit Judges.

PER CURIAM:

This is an appeal from the denial of a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. In his petition, Harold Guy Hunt, former Governor of the State of Alabama, challenged the constitutionality of his conviction in state court for violating the Alabama Code of Ethics for Public Officials, Ala.Code § 36-25-5 (1975).

Hunt argues the district court erred by rejecting his contention that the sole charge upon which he was found guilty should have been barred by the statute of limitations under Alabama law, and that the contrary holding that the offense was not completed within the statutory period denied him constitutional due process. We affirm.

Hunt was elected Governor of the State of Alabama on November 4, 1986. After his election, a number of accounts were opened in

---

[*]Honorable Levin H. Campbell, Senior U.S. Circuit Judge for the First Circuit, sitting by designation.

separate banks for the stated purpose of funding either the expenses attendant to his inauguration or to fund his political campaign. The flow of money into and out of the various accounts from November 1986 until December 1989 is detailed in both the state court appellate decisions, *Ex Parte Hunt,* 642 So.2d 1060 (Ala.1994), and *Hunt v. State,* 642 So.2d 999 (Ala.Cr.App.1993), and the federal district court's decision, *Hunt v. Tucker,* 875 F.Supp. 1487 (N.D.Ala.1995).

Hunt was indicted for violating the state Ethics Act as a result of the handling of these accounts. Although Hunt was charged with twelve additional counts, specifically six counts of theft, three counts of receiving stolen property, and three counts of conspiracy, all those counts were dismissed because the state trial court found that the applicable statute of limitations had run. It explained the theft offenses are complete when the defendant knowingly obtained or exerted unauthorized control over property, which occurred outside the limitations period, while a violation of the Ethics Act requires the added element of obtaining direct personal financial gain, an element which the district court held was not present at the time Hunt simply took control of the accounts.

On April 22, 1993, a jury returned a guilty verdict on the Ethics Act charge, which was affirmed by both the Alabama Court of Criminal Appeals and the Alabama Supreme Court. Hunt then filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which the district court denied without an evidentiary hearing. Hunt is not incarcerated, but is serving his sentence by

performing community service and paying restitution as conditions of his probation.

The indictment charged that Hunt violated Alabama's Ethics Law as defined in Section 36-25-5 of the *Code of Alabama.* The section of the Act Hunt allegedly violated states in part:

> (a) No public official or employee shall use an official position or office to obtain direct personal financial gain for himself, or his family, or any business with which he or a member of his family is associated unless such use and gain are specifically authorized by law.

A violation of the Ethics Act is a felony subject to a three-year statute of limitations. Ala.Code § 15-3-1 (1975); *Britain v. State,* 518 So.2d 198, 201 (Ala.Cr.App.1987), *cert. denied,* 486 U.S. 1008, 108 S.Ct. 1736, 100 L.Ed.2d 199 (1988).

Hunt was indicted by the grand jury on December 28, 1992, so the State was required to prove that the offense giving rise to the indictment in this case was committed on or after December 28, 1989.

The particular accounts around which the statute of limitations question revolves were opened on February 14, 1987. On that date, the "Friends of Guy Hunt" account (# 15385-8) was opened in the Cullman Savings and Loan Association with Hunt and others as signatories. Deposited into that account were funds raised for Hunt's inauguration and transition as governor. A personal savings account titled "Guy Hunt or Mrs. Guy Hunt" (# 15386-6) was also opened in the same savings and loan. Guy Hunt was the sole authorized signatory on this account. On November 12, 1988, Hunt received from the savings and loan a single or consolidated signature card, showing "Guy Hunt or Mrs. Guy Hunt" as the name on

the two accounts and carrying forward Guy Hunt as the only authorized signatory on the two accounts. The two accounts, # 15385-8 and # 15386-6, held separate funds.

On December 29, 1989, the last withdrawal was made from the Friends of Guy Hunt account, account # 15385-8, in the amount of $11,700. Taken out in the form of a cashier's check made payable to Guy Hunt or Mrs. Guy Hunt, it was deposited into Hunt's personal checking account at the AmSouth Bank and then immediately used to cover a $16,297.23 check drawn on the personal account to make payment on a note and mortgage on Hunt's farm.

Hunt has asserted throughout this litigation that the prosecution against him was barred by the three-year statute of limitations because the offense was completed and the statute of limitations commenced running on November 12, 1988, the date that he became the sole signatory on the # 15385-8 account, which contained the money he was accused of misusing. The Supreme Court of Alabama held, however, that under the Alabama Ethics Law, there was no "direct personal financial gain" until the funds in the inaugural fund account were actually used by Hunt. The court stated:

> The crime was not complete when Hunt became the sole signatory on the account containing funds raised for his inauguration. The offense for which he was convicted was not committed until the inaugural funds were spent for an improper purpose and Hunt thereby obtained a direct personal financial gain.
>
> ....
>
> In keeping with the intent of the legislature in reenacting the Ethics Act of 1975, we conclude that, upon Hunt's gaining exclusive control over the Cullman Friends account, the crime defined in terms of the receipt of a "direct personal financial gain' was incomplete. Although Hunt was in control of the funds at that time, he had not received an improper

> "direct personal financial gain.' Only when Hunt, on December 29, 1989, transferred, by check, the $11,700 from the former Cullman Friends account to his personal account to cover a $16,297 payment on a note secured by a mortgage on his farm, did he receive a direct personal financial gain within the meaning of § 36-25-5.

*Ex Parte Hunt,* 642 So.2d at 1067.

Simply stated, the law of Alabama is that funds earmarked for inaugural and transition expenses of the governor do not lose their character as such merely because they are in an account upon which the governor is the sole signatory. Therefore, he had received no direct personal financial benefit by virtue of his sole control over the account which held those designated funds.

Although it could be fairly argued that he received sufficient financial gain to violate such a statute when he obtained exclusive control of the accounts, federal courts must follow the interpretation of Alabama law made by the highest court of that State absent a constitutional violation. *McCoy v. Newsome,* 953 F.2d 1252, 1264 (11th Cir.) (state court's interpretation of state statutes is binding on federal courts), *cert. denied,* 504 U.S. 944, 112 S.Ct. 2283, 119 L.Ed.2d 208 (1992); *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) (a federal court may not issue the writ on the basis of a perceived error of state law).

Hunt argues that the Alabama Supreme Court decision is inconsistent with prior Alabama law which would hold that he could have been convicted of violating the statute when he became sole signatory on the account, and that this departure constitutes an "unexpected and indefensible" enlargement of the statute in

violation of his due process right to fair notice of what conduct is proscribed. *Bouie v. City of Columbia,* 378 U.S. 347, 354, 84 S.Ct. 1697, 1703, 12 L.Ed.2d 894 (1963) ("If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect."). That interpretation of the statute would mean that Hunt should get the benefit of the statute of limitations defense, the time beginning to run at the earliest time that he could have been convicted under the statute.

Hunt's constitutional argument that his case falls within the *Bouie* principle must fail. *First,* Hunt's premise that the Alabama Supreme Court relied upon retroactive application of *Lambert v. Wilcox County Comm.,* 623 So.2d 727 (Ala.1993), as the basis for its holding that the crime was not complete until Hunt spent the money, is erroneous. In *Lambert,* private citizens brought an action for declaratory and injunctive relief to determine whether it was appropriate under the Ethics Act for a member of the county commission, who was also employed as a school bus driver, to vote on a measure to levy a sales tax, the proceeds of which were to be used to refinance a school bond issue. *Lambert,* 623 So.2d at 728. The court held that the commissioner did not obtain any "direct personal financial gain" for himself, as the measure "neither affected [him] as an individual or as a member of a small group nor affected him in a way different from the way it affected other members of the class to which he belonged." *Lambert,* 623 So.2d at 731.

After its brief discussion of prior case law, the Alabama Supreme Court in *Hunt* stated that its discussion of legislative intent and history in *Lambert* "should dispel any doubt" about the court's interpretation of the type of private interest meant by the term "direct personal financial gain." 642 So.2d at 1067. Neither the holding in *Lambert* nor the Court's reference to it in *dicta* signals any break from prior law. *Lambert* did not make punishable conduct that was previously legal, nor did it overrule any prior case. Rather, the Alabama Supreme Court cited its discussion of the legislative history and intent in *Lambert* as confirmation of its prior interpretation of the statute.

*Second,* the state courts' application of the Act to Hunt does not represent a departure from precedent, but rather is wholly consistent with the cases addressing Ethics Act violations. Hunt argued that prior case law "interpreted the Ethics Act violations in a manner which treated an alleged offense as being complete at the earliest possible date," citing two cases: *Chandler v. State* 615 So.2d 100 (Ala.Cr.App.1992), *cert. denied, Ex Parte Chandler,* 615 So.2d 111 (Ala.1993), and *Allen v. State,* 380 So.2d 313 (Ala.Cr.App.1979), *writ denied, Ex Parte Allen,* 380 So.2d 341 (Ala.), *cert. denied,* 449 U.S. 842, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980). The cited cases dealing with Ethics Act violations address the question of sufficiency of the evidence to sustain a conviction. In *Chandler v. State,* the court held the evidence sufficient to prove defendant used his position as mayor for his direct personal financial gain when he received $50,000 of city and county money for his private property, even if the property was

worth more than he sold it for and he did not make a "profit" on the sale. The Court in *Hunt* specifically rejected Hunt's reading of *Chandler* that all the elements required to violate the Act were present when the money was received rather than when it was spent. 642 So.2d at 1067.

In *Allen v. State,* the court held as sufficient evidence that defendant used her position as state treasurer for personal gain by obtaining loans that benefited her in exchange for depositing State treasury funds in the bank.

In a third case involving an Ethics Act violation, *Britain v. State,* 518 So.2d 198 (Ala.Cr.App.1987), the court, on a charge that defendant used his official position as maintenance supervisor for his direct personal financial gain, held as sufficient that he had used the labor and services of state employees that he supervised for work at his personal residence.

These cases differ from *Hunt* only in that under the particular circumstances of each, the defendants personally benefited simultaneously with the receipt of that money. These cases would all seem to indicate support for the Alabama Supreme Court's holding that Hunt had no "direct personal financial gain" until he converted the money to his own use or "spent" the money from the Cullman accounts under the circumstances of this case. As the district court noted, the funds were ostensibly raised for a proper purpose to pay Hunt's transition and inaugural expenses as governor in 1987. Until the funds were actually taken from the Cullman Inaugural Account, the possibility remained that they would be used for a lawful purpose.

The Alabama Supreme Court's interpretation of the statute, albeit not the only one possible, is consistent with the statutory language and prior Alabama case law.

Hunt also asserts the district court erred: (1) in finding that the funds at issue were not campaign funds and therefore Hunt was not subject to selective prosecution in violation of the Equal Protection and Due Process Clauses; (2) in rejecting his contention that the state trial court's instruction to the jury that it was unlawful to use excess campaign funds for personal use denied Hunt due process and constituted a judicial *ex post facto* law violating Article I, § 10 of the United States Constitution; (3) in finding that even though the indictment under which Hunt was charged was "fatally defective," it did not violate the Sixth and Fourteenth Amendments by failing to include essential elements of the offense, *i.e.,* that the offense was committed knowingly and willingly; and (4) by finding there was sufficient evidence presented to justify the guilty verdict.

Having studied the briefs and oral argument, we affirm as to each of those issues without opinion.

**AFFIRMED.**